THE CRESCENT MANUFACTURING COMPANY V. THE
N. O. NELSON MANUFACTURING COMPANY,
*Appellant.*

1. **Appellate Practice.** The point that plaintiff had improperly split up its cause of action will not be reviewed in the appellate court where it was not made before the referee trying the cause and not passed upon by him.

2. **Practice:** ELECTION OF COUNTS. Where the first count of a petition declares upon a contract and the second count, among other items, for money laid out and expended by plaintiff at the request of defendant, plaintiff will not be required to elect as to which cause of action it will proceed to trial.

3. ———: DIFFERENT COUNTS. In an action in two counts, the first based upon a contract and the second upon a running account, it makes no difference that some of the items of the second count might have been included in the first count based upon the contract, where it is plain that the defendant was not prejudiced thereby.

4. **Contract:** CANCELLATION: NOTICE. Where a contract for the manufacture of barbed wire contained the clause: "Any judicial or legal interference shall act as a cancellation of this contract, if either party so desires," suits instituted against the parties to it to enjoin them from selling barbed wire, upon the ground of the infringement of certain patents, will furnish sufficient ground for the cancellation of the contract, but to terminate the contract on that ground it would be necessary for the party intending to do so to give the other clear and unequivocal notice.

5. ———: BREACH : MEASURE OF DAMAGES. Where by the terms of a contract plaintiff was to manufacture plain wire, furnished by defendant, into barbed wire, and before the termination of the contract defendant refused to furnish plain wire as called for by its terms, the measure of damages for the breach is the difference between the contract price and the cost to plaintiff of doing the work.

6. ———: ———: ———. Plaintiff in this case being the owner of its factory and machinery and the contract constituting no such relation as that of master and servant, it had the right to make as few or as many contracts as it saw fit whilst executing the contract with defendant and was entitled to the profits which it might have made on this particular contract; evidence in mitigation of damages was properly excluded.

*Appeal from St. Louis City Circuit Court.* — HON. W. H. HORNER, Judge.

AFFIRMED.

*Taylor & Pollard* for appellant.

(1) The first cause of action is on a special contract for letting and hiring labor, not one for selling or buying. The test is this: "Where the ground work of the labor or the principal material entering into its composition has been provided by the employer, the contract is a contract for letting and hiring of work, although the undertaker of the work may have furnished the accessional materials necessary for its completion." 1 Addison on Contracts, [Ed. of 1883, by B. V. Abbott] 383; *Mixer v. Howarth,* 21 Pick. 207; *Spencer v. Cone,* 1 Metcalf, 283; *Higgins v. Murray,* 73 N. Y. 254; *Lee v. Griffin,* 30 L. J. Q. B. 292; Benj. on Sales [3 Ed.] sec. 105, p. 106. (2) The referee erred in rejecting the evidence which overwhelmingly showed that plaintiff could have obtained other employment for its machines, after defendant canceled the contract, at equally remunerative rates. "The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertions to render the injury as light as possible. If, by his negligence or wilfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him." 1 Sutherland on Damages, 184; Sedgwick on Measure of Damages [5 Ed.] pp. 211, 212, star page, and p. 230; *Dillon v. Anderson,* 43 N. Y. 232; *Lewis v. Ins. Co.,* 61 Mo. 534; *Hotel Co. v. Sauer,* 65 Mo. 289. (3) In a case of letting and hiring for a given term, where the contract is wrongfully terminated by the employer, the other party is entitled to the stipulated

compensation, if that is his loss; but the law imposes upon him the duty to seek other employment, and to the extent that he obtains it and is paid for it, or might have done so, his damages will be reduced. 1 Sutherland on Damages, p. 150; 2 Sutherland on Damages, p. 473; *Pond v. Wyman*, 15 Mo. 180; *Squire v. Wright*, 1 Mo. App. 173; *Ream v. Watkins*, 27 Mo. 518; *Stone v. Vimont*, 7 Mo. App. 282; *Soursin v. Salorgne*, 14 Mo. App. 488; *Howard v. Daily*, 61 N. Y. 371; *Chamberlain v. Morgan*, 68 Pa. St. 168; *King v. Steiren*, 44 Pa. St. 99; *Gillis v. Space*, 63 Barb. 177; *Huntington v. Railroad*, 33 How. Pr. 419. (4) But even if the court should say that the contract was not one of letting and hiring, still the obligation to seek other employment for their machines, or at least accept it when offered, was obligatory. *Miller v. Church*, 7 Me. 55; *Chamberlain v. Morgan*, 68 Pa. St. 168; *Howard v. Daily*, 61 N. Y. 371; *Dillon v. Anderson*, 43 N. Y. 237; *Hamilton v. McPherson*, 28 N. Y. 72; *French v. Vining*, 102 Mass. 132; *Rexter v. Starin*, 73 N. Y. 602; *Loker v. Damon*, 17 Pick. 284; Sedgwick on Measure of Damages, [5 Ed.] star pp. 210-212, top pp. 229, 231; *Sherman v. Comstock*, 21 Wend. 457; *Rogers v. Railroad*, 24 Ind. 103; *Jones v. Van Patton*, 3 Ind. 254; *Worth v. Edmonds*, 52 Barb. 40; *Davis v. Fish*, 1 Greene (Iowa) 406; *Dobbins v. Duquoids*, 65 Ill. 464; *Simpson v. City*, 34 Iowa, 568; *Mather v. Butler Co.*, 28 Iowa, 253; *Beymer v. McBride*, 37 Iowa, 114; *Allender v. Railroad*, 37 Iowa, 264; *Railroad v. Echals*, 54 Miss. 264; *Railroad v. Raysdale*, 46 Miss. 458; *Taylor v. Read*, 4 Paige, 72; *Walker v. Ellis*, 1 Sneed, 515, 523; *Murrill v. Whiting*, 32 Ala. 54; *Hecksher v. McBrey*, 24 Wend. 304; *Pundy v. Andras*, 41 Vt. 641-45; *Bradley v. Denton*, 3 Wis. 557. (5) It is a rule of law that one cause of action, as one springing from a single contract, cannot be so split as to authorize more than one action; and the same rule would make it improper to so divide a single cause by

making it into separate counts in one complaint, as to show more than one cause of action. Bliss on Code Pleadings, 118; *Bendernagle v. Cocks*, 19 Wend. 207. The referee violated this against the objection of appellant. (6) The referee erred in not finding that defendant's third defense justified a cancellation of the contract. The agreement did not require appellant to notify plaintiff that the contract would be canceled because of the legal interference referred to in said defense. Appellant notified plaintiff that the contract was canceled, and the mere fact that it did not assign such legal interference, as a reason at the time, is not a waiver of this as a justification. Plaintiff knew of the suit by Washburn and Moen Manufacturing Company, and knew that appellant had canceled the contract; hence the plaintiff was not injured by failure of appellant to give notice that it desired the contract canceled because of legal interference.

*Fisher & Rowell* and *W. B. Horner* for respondent.

(1) The proper measure of damage is the difference between the contract price and what it would cost to perform the contract. *Masterton v. Brooklyn*, 7 Hill, 75; *Devlin v. Mayor*, 63 N. Y. 25; *Fox v. Harding*, 7 Cush. 522; *United States v. Speed*, 8 Wall. 77; *Snow v. Wright*, 115 Mass. 298; *Railroad v. Ward*, 14 Ill. 528; *Nilson v. Morse*, 52 Wis. 255; *Boyd v. Meighan*, 48 N. J. L. (8 Vroom) 404; *Hale v. Trout*, 35 Cal. 229; *Fairchild v. Rogers*, 32 Minn. 269; *Rice v. Caudle*, 71 Ga. 605; *Hare v. Parkersburgh*, 24 West. Va. 554; *Goodrich v. Hubbard*, 51 Mich. 62; *Pittsburgh Co. v. Hinckley*, 17 Fed. Rep. 585; *Wisner v. Barber*, 10 Oregon, 324; *United States v. Behan*, 110 U. S. 338; *Railroad v. Howard*, 13 How. (U. S.) 344; 3 Parsons on Contracts, [7 Ed.] bot. p. 196 and star p. 184; 1 Sedgwick on Damages [7 Ed.] p. 134, side p. 80, note *a*. (2) The doctrine of law calling upon a discharged servant to

seek other employment has no bearing upon this case. *Nilson v. Morse*, 52 Wis. 255, and cases cited under point 1. (3) The doctrine referred to in point 1 of appellant's brief, as well as the cases cited thereunder, relates only to the question of the statute of frauds. (4) There is no evidence in the cause and no evidence offered to prove negligence or wilfulness upon the part of respondent in its relation to the appellant in the performance of the contract. (5) There was no splitting of a cause of action, nor was any such point raised at the hearing. (6) The objection to the evidence upon the second cause of action was never well taken, but at all events was covered by the amendment allowed by the trial court. (7) The question of what "legal interference" is is a question of law, being the construing of a contract, and the court erred in the opinion that the mere bringing of a suit by Washburn and Moen Manufacturing Company without any application for an injunction was such a "legal interference." (8) The referee rightly found that the appellant waived such "legal interference," and the evidence abundantly supports his finding. (9) It appears plainly enough that the sole reason that the appellant broke the contract was because it had gone into the business of manufacturing barb wire itself.

*Draffen & Williams* also for respondent.

Three questions arise upon this record, and are presented for consideration by the brief of the appellant: *First*. Should the judgment below be reversed, because of the alleged informality in the petition, in setting out plaintiff's case in two counts? *Second*. Did the court below err in holding that the suit, instituted May 16, 1884, taken in connection with the conduct of the parties, did not operate as a cancellation of the contract; and, *third*, did the court below

adopt the correct rule as to the measure of damages? (1) (*a*) The petition in this case is similar to that in the case passed upon by this court in *Lumber Co. v. Warner*, 93 Mo. 374–380. (*b*) Defendant is in no position to take advantage of a formal defect in the petition, if such a defect exists. *Hall v. Johnston*, 57 Mo. 521–23; *Whetstone v. Shaw*, 70 Mo. 575; *Williamson v. Fisher*, 50 Mo. 198. (*c*) This, if error it be, cannot be held to have materially injured the appellant. 1 R. S., p. 642. sec. 3775. (2) The institution of the suit against defendant did not authorize the cancellation of the contract. This did not constitute a legal interference. It was left to the election of the parties to cancel the contract. "The law requires some positive act by the party who would rescind which shall manifest such intention and put the opposite party on his guard. Bishop on Contracts, sec. 832; *Higby v. White*, 8 Ohio, 201; *Mellon v. Smith*, 65 Mo. 315; *Thompson v. Ins. Co.*, 52 Mo. 469. (3) The measure of damages was the difference between the cost to plaintiff of manufacturing the barbed wire, and the price it was to receive therefor under the terms of the contract. In addition to the authorities cited by our associates, we call attention to the recent case in this court of *Lumber Co. v. Warner*, 93 Mo. 374–389. *Hinckley v. Pittsburgh Steel Co.*, 121 U. S. 272; *Insley v. Shepard*, 31 Fed. Rep. 869; *Atkisson v. Morse*, 5 West. Rep. 917; *Nelson v. Morse*, 52 Wis. 240; 2 Suth. Dam. 474, 479, 522.

BLACK, J.—Plaintiff and defendant are corporations organized under the laws of this state. The suit is in two causes of action; the first seeks to recover damages for a breach of the following contract:

"December 27, 1883.

"We propose to manufacture for Nelson Manufacturing Company five thousand pounds of barbed wire per day, commencing January 1, 1884, and to

continue to March 1, 1884; and from March 1, 1884, to January 1, 1885, ten thousand to fifteen thousand pounds per day, all at fifty cents per one hundred pounds, we to furnish all material, except wire and reels, which they are to furnish, delivered at our factory. We agree to sell to no other St. Louis dealers or manufacturers. Any judicial or legal interference shall act as a cancellation of this contract, if either party so desires. We agree to return in barbed fence wire an amount equal to the number of pounds plain or galvanized wire supplied us. Tare each reel to be five pounds.

"CRESCENT MANUFACTURING COMPANY,

"HORACE STONE, Manager.

"Accepted.

"N. O. NELSON MANUFACTURING CO.,

"By J. B. CASE, Secretary."

The breach alleged is that defendant refused to furnish the plaintiff with wire from and after July 11, 1884, and thereafter refused to comply with the terms of the contract. The second cause of action is for a balance due on a running account.

The answer, besides a general denial, sets up three separate defenses and a counter-claim; but as the case is presented here it will only be necessary to notice the third defense. In that the defendant sets out that part of the contract which provides that any judicial or legal interference shall act as a cancellation, if either party so desires, and states that in the latter part of May, 1884, suit was instituted in the circuit court of the United States for the eastern district of Missouri by the Washburn and Moen Manufacturing Company and others against the defendant to restrain it from selling barbed wire, the bill alleging an infringement of certain letters patent, and that the suit was such a legal interference as justified the cancellation of said contract, and defendant determined to cancel the same as

soon as the wire it then had on hand was disposed of, and so notified the plaintiff. These matters were put in issue by the reply.

The case was tried before a referee who found for the plaintiff on both causes of action, and assessed the damages on the first at $4,056.30, which amount was reduced by a *remittitur* to $3,739.36, and on the second in the sum of $352.75, adding interest to the last-named amount. The other facts in the case will be stated in connection with the questions to which they relate.

1. The second cause of action is, as we have said, based upon a running account with items on both sides. From the exhibit filed therewith many of the items appear to be for spools of wire at fifty cents per one hundred pounds, and other items are for cartage, and for money laid out in the purchase of reels and plain wire. On the hearing, before the referee, it was admitted that the items for spools of wire were for barbing wire under the terms of the contract, and thereupon the defendant asked the referee to exclude all the evidence relating to these items, because the petition did not state a cause of action for work and labor done. The point is now made that the plaintiff had no right to split up its cause of action into two counts, and that the referee erred in not requiring defendant to elect upon which cause of action it would proceed to trial. We are unable to see how any such a question is before us on this record. The objection made before the referee does not even suggest the proposition that plaintiff had improperly split up its cause of action, and the referee does not appear to have ever passed upon and to have been asked to pass upon any such a question. Besides this the objection actually made before the referee was obviated by an amendment of the petition by interlineation.

There were items in the second cause of action which could not have been recovered by declaring on

the contract, because they do not come within its provisions, but are for money laid out and expended by plaintiff at the request of defendant. The plaintiff could not, therefore, have been required to elect as to which cause of action it would proceed to trial. The items for barbing wire, and possibly some of the other items of the account, might have been included in the count based upon the written contract, but we are able to see that defendant was not in the least prejudiced by including them in the cause of action based on the running account, and if a timely and proper objection had been made and overruled it would be no ground for reversal.

2. The suit of the Washburn and Moen Manufacturing Company to restrain defendant from selling barbed wire because of certain letters patent was commenced on May 19, 1884. Though the bill prayed for injunctive relief, no temporary injunction was issued, and what the final decree was, if any was ever entered, does not appear from the record before us. The referee's conclusions are, that the institution of that suit justified the defendant in canceling the contract, but that it was necessary for defendant to give plaintiff notice of such intention and determination; and he finds the fact to be that defendant gave no such notice, and he finds that defendant waived this provision of the contract by failing to give prompt notice, and by continuing to furnish plain wire and receiving and selling barbed wire after the suit had been commenced. The defendant insists that these conclusions of law are erroneous, and that the finding of the facts are not supported by the evidence.

The evidence shows that defendant did not furnish plaintiff any plain wire after June 18, 1884, and the last item for barbed wire turned over by the plaintiff to the defendant is forty-two spools on June 28 of that year. The proof, however, shows that, after the commencement

of the patent injunction suit in May, the defendant turned over to plaintiff one hundred and fifteen thousand pounds of clear wire, and plaintiff barbed and turned over to defendant about three hundred thousand pounds.

The evidence for the plaintiff shows that in June, 1884, Mr. Chase, the defendant's secretary, told an officer of the plaintiff that the patent suit was taking up his time, but that it amounted to nothing. It appears that, as early as May of that year, Mr. Chase, for defendant, demanded of plaintiff large deductions from accounts rendered because of alleged excesses in weight of the reels over the tare agreed upon, and for excessive weight of barbed wire. The plaintiff refused to make the demanded allowances, and the officers of the plaintiff say that it was because they refused to make these allowances that the defendant refused to furnish any more wire. This alleged deception in the weight of the reels is set up in defendant's answer as a justification for refusing to go on with the contract, and the alleged excessive charges amounting to about two thousand dollars are set up in the counter-claim, which issues were found against the defendant by the referee.

In May, 1884, a corporation known as the American Barbed Wire Company was organized for the purpose of barbing wire. The incorporators were the employes of the defendant corporation, and another person who had no means. The cash capital of five thousand dollars was furnished by Mr. Nelson, the president of defendant, and he leased in his own name the building in which the work of the new corporation was carried on, though the new corporation paid the rent. The president of the new company continued in the services of the defendant and transacted much of the business of the new corporation at the defendant's office. This new company commenced and continued to barb wire for defendant. In short the business which the plaintiff

had been doing for the defendant was turned over to the new company.

We shall, with the referee, assume that the patent suits (for there was one against the plaintiff) furnished a sufficient ground for canceling the contract on that clause which says : "Any judicial or legal interference shall act as a cancellation of this contract, if either party so desires." The plaintiff and the defendant knew that their right to manufacture and sell this barbed wire was questioned, and hence the above stipulation It gives either party an option to terminate the contract, but to say that either party could exercise that right by some uncommunicated determination is manifestly unjust, and is not the true meaning of the contract. To terminate the contract on that ground it was necessary for the party intending so to do to give the other party clear and unequivocal notice. If there is any evidence in the record tending to show such notice, it is not pointed out in the abstracts. We agree with the referee that no such notice was ever given.

But it is argued that plaintiff had notice of defendant's refusal to go on with the contract. The evidence shows clearly and beyond all doubt that the refusal to go on with the contract was by defendant placed on the ground of alleged deceptive and excessive weights, and on no other ground. But we cannot refrain from coming to the conclusion from the evidence, the substance of which has been given, that the real reason was that defendant concluded to barb its own wire, and that the new corporation was created for that purpose. The facts stand out too boldly to admit of fair contradiction. But a refusal to go on with the contract for either or both of these reasons was not an exercise of any right of cancellation reserved in the contract. The defendant never availed itself of that right by giving notice. There was no cancellation of the contract. The result reached by the referee on this branch of the case is right, without regard to any question of waiver.

3. The evidence shows and the referee found that plaintiff was at all times ready, able and willing to execute the contract. The defendant having refused to furnish any more wire, the plaintiff's mill closed in July, but resumed work in September. The defendant offered evidence, 'in mitigation of damages, tending to show that plaintiff could have made other engagements for barbing wire for at least part of the unexpired time of the contract at the same prices which the defendant agreed to pay; but the referee, in the end, excluded the evidence. The referee took the lowest amount of wire specified in the contract, to be furnished daily, and deducted the cost of barbing the same from the contract price and allowed the difference for the unexpired time as damages on the first count, and in this it is insisted he erred.

In the recent case of the *Black River Lumber Co. v. Warner*, 93 Mo. 374, we had occasion to consider a like question. In that case the plaintiff agreed to furnish the timber and saw and deliver to defendant at a specified place a quantity of lumber of a particular character, for named prices. The defendant refused to complete the contract, after it had been partly executed; and, as to lumber not yet sawed, we held the measure of damages was the difference between the contract price and the cost of furnishing the logs, manufacturing the lumber and delivering it at the designated place, thus allowing the plaintiff to recover for any profits it might have made had the contract been fully performed on both sides. The only substantial difference between this case and that one is, that here the plaintiff was to manufacture furnished plain wire into barbed wire, and there plaintiff furnished all of the material. This difference does not affect the measure of damages. The present case is like that of *United States v. Speed*, 8 Wall. 78, where the United States agreed to furnish the hogs and Speed agreed to slaughter them, and the same rule was

applied. The difference between the contract price and the cost to plaintiff of doing the work is the true measure of damages in this and like cases. *Devlin v. Mayor*, 63 N. Y. 25; *Hinckley v. Steel Co.*, 121 U. S. 272; *Nilson v. Morse*, 52 Wis. 254.

Where a servant is wrongfully discharged during his term and lays his damages at the contract wages for the balance of the term, it is generally held that evidence may be introduced in mitigation of damage of what he might have earned in the interim by using reasonable efforts to procure other employment. So in general where a party has been injured, or damaged, by a breach of a contract he should do whatever he can to lessen the injury. Many cases asserting these principles of law are cited by the defendant, but they have no application to the case in hand. The plaintiff owned its factory and the machinery and the contract constituted no such relation as that of master and servant. It had the right to make as few or as many other contracts as it saw .fit whilst executing the contract with defendant, and it is entitled to the profits which it might have made on this particular contract. The evidence offered in mitigation of damages was properly excluded.

We see no reason for disturbing the judgment in this case and it is therefore affirmed. BARCLAY, J., not sitting; the other judges concur.