[No. 55.  Decided February 10, 1891.]

SKAGIT RAILWAY AND LUMBER COMPANY v. H. D. COLE.

CONTINUANCE — AMENDMENT — ABUSE OF DISCRETION — BREACH OF
CONTRACT — DAMAGES — EVIDENCE — ARGUMENT OF COUNSEL.

The refusal of the superior court to grant defendant a continuance on account of the absence of its principal counsel, who, it was rumored, had been drowned, is not such an abuse of discretion as to justify a reversal of the judgment in a cause, especially where defendant was represented by other attorneys, and had proceeded to trial with the expectation that such counsel would arrive before any material progress had been made in the cause before continuance was asked for. (HOYT, J., dissents.)

The refusal of the superior court to permit defendant to amend its answer so as to set up another defense, after the plaintiff had rested his case, which amendment would have necessitated a continuance to enable plaintiff to procure witnesses to meet the new defense, is not such an abuse of discretion as to justify a reversal of the judgment.

Under a contract whereby plaintiff was to cut timber on defendant's land at a certain rate of stumpage, and defendant was to furnish him with supplies during the continuance of the contract, the plaintiff in an action for breach thereof, can recover expenses incurred by him for repeated trips from his camp to defendant's store, made with a reasonable expectation of getting the supplies needed, based upon information furnished by defendant.

Where the complaint alleges that plaintiff was prevented from carrying on his business by reason of defendant's failure to furnish supplies, and that plaintiff could not procure and pay for supplies elsewhere, proof is admissible to show that plaintiff had attempted to procure supplies from other parties and had failed to get them.

In an action for breach of contract to furnish plaintiff supplies for carrying on certain logging operations, if defendant knew, when it entered into the contract, that plaintiff was unable to obtain the necessary supplies elsewhere, and that when it ceased furnishing same that plaintiff would be compelled to abandon the enterprise or be seriously embarrassed in its further execution, the measure of damages is the difference between the value of the logs which he could have put in the market with the full force he could have operated had the supplies been furnished as contracted, and the value of the logs he did put in with the diminished force, less the cost of getting out and handling such excess. (HOYT, J., dissents.)

Where statements transgressing the reasonable limits of argument to a jury are made under an apparent *bona fide* belief that they are permissible under the proof, and no objection is made thereto at the time, the party aggrieved must be content with an instruction to the jury to disregard such statements

*Appeal from Superior Court, Skagit County.*

The facts are fully stated in the opinion.

*J. C. Haines,* for appellant.

The court should have granted a continuance because of the unavoidable absence of the defendant's counsel. *Radford v. Fowlkes,* 85 Va. 820 (8 S. E. Rep. 817); *Myers v. Trice,* 86 Va. 835 (11 S. E. Rep. 429); *Thompson v. Thornton,* 41 Cal. 626; *Rice v. Melendy,* 36 Iowa, 166; *Allen v. State,* 10 Ga. 85; *Shultz v. Moore,* 1 McLean (U. S.) 334; *Printup v. Mitchell,* 19 Ga. 586; *Rhode Island v. Massachusetts,* 11 Pet. 226; *Hunter v. Fairfax's Devisee,* 3 Dall. 305.

The court erred in admitting testimony in regard to the plaintiff's attempts to secure supplies elsewhere. The evidence should correspond with the allegations, and be confined to the point in issue. 1 Greenl. Ev. (14th ed.) p. 76, and cases there cited.

Profits which might have resulted but for a breach of the contract are too remote to constitute an element of damage. 3 Suth. Dam. 156, 157, note; 3 Pars. Cont. (7th ed.) 181–3; *McKinnon v. McEwan,* 48 Mich. 106 (42 Am. Rep. 458); *Blanchard v. Ely,* 21 Wend. 350 (34 Am. Dec. 250); *Ward v. Railroad Co.,* 47 N. Y. 29 (7 Am. Rep. 405); *Freeman v. Clute,* 3 Barb. 424; *Giles v. O'Toole,* 4 Barb. 261; *Hadley v. Baxendale,* 9 Exch. 341 (S. C. 26 Eng. L. & Eq. 398); *Green v. Williams,* 45 Ill. 206; *Frazer v. Smith,* 60 Ill. 145; *Rhodes v. Baird,* 16 Ohio St. 573; *De La Zerda v. Korn,* 25 Tex. Supp. 188; *Gilpins v. Consequa,* 1 Pet. C. C. 85; *Yates v. United States,* 15 Ct. of Cl. 119; *Manhattan Stamping Works v. Koehler,* 45 Hun, 150; *Harper v. Weeks,* 89

Ala. 577 (8 South. Rep. 39); *Russell v. Giblin,* 10 N. Y. Supp. 315; *Bazin v. Steamship Co.,* 3 Wall. Jr. 229.

"All courts agree that it is the duty of the presiding judge, either upon his own notion or upon the request of the opposing party or his counsel, to interpose and check the party or his counsel in an improper and prejudicial line of argument." *Tucker v. Henniker,* 41 N. H. 317; *Bulloch v. Smith,* 15 Ga. 395; *Mitchum v. State,* 11 Ga. 615; *Dickerson v. Burke,* 25 Ga. 225; *Forsythe v. Cothran,* 61 Ga. 278; *Davis v. Hill,* 75 N. C. 224; *Hoxie v. Home Ins. Co.,* 33 Conn. 471; *School Town of Rochester v. Shaw,* 100 Ind. 268; *Crawford v. State,* 15 Tex. App. 501; *State v. Young,* 99 Mo. 666 (12 S. W. Rep. 879).

*Ronald & Piles,* for appellee.

A motion for a continuance is a matter addressed to the discretion of the trial judge, and it has often been held that its refusal affords no ground for an appeal. *Dial v. Insurance Association,* 29 S. C. 560 (8 S. E. Rep. 27); *Westfield v. Westfield,* 19 S. C. 85; *Keesee v. Border Grange Bank,* 77 Va. 129; *Westheimer v. Cooper,* 40 Kan. 370.

In this case the measure of damages is such as did arise, and would naturally arise, according to the usual course of things, from a breach of the contract, or such as may reasonably be supposed to have been in the contemplation of both parties when they made the contract, and as the probable result of a breach of it. 1 Suth. Dam. 75, 90, 91; *Cockburn v. Ashland L. Co.* 54 Wis. 619; *McHose v. Fulmer,* 73 Pa. St. 365; *Meade v. Rutledge,* 11 Tex. 44; *Leonard v. Beaudry,* 68 Mich. 312; *Brent v. Parker,* 23 Fla. 200; *Taft v. Tiede,* 55 Iowa, 370; *Cunningham v. Dorsey,* 6 Cal. 19; *Atkinson v. Morse,* 57 Mich. 276; *Masterton v. Mayor,* 7 Hill, 61 (42 Am. Dec. 38); *United States v. Behan,* 110 U. S. 338; *United States v. Speed,* 8 Wall. 77; *Railroad v. Howard,* 13 How. 344; *Hinckley v. Pittsburg Steel Co.,* 121 U. S. 264; *Flick v. Weatherbee,* 20 Wis. 392.

Where counsel in argument to the jury exceed the limits allowed to advocacy, the way to correct the objectionable effect of the argument is through an objection to it at the time. *Learned v. Hall*, 133 Mass. 417; *Rudolph v. Landwerlen*, 92 Ind. 34; *Powers v. Mitchell*, 77 Me. 361; *Dowdell v. Wilcox*, 64 Iowa, 721; *Worley v. Moore*, 97 Ind. 15; *Carter v. Carter*, 101 Ind. 451; *McLain v. State*, 18 Neb. 154; *Bradshaw v. State*, 17 Neb. 147; *State v. Anderson*, 10 Or. 448; *State v. Abrams*, 11 Or. 169; *Com. v. Scott*, 123 Mass. 236; 9 Crim. Law Mag. 743, 760-2.

The opinion of the court was delivered by

SCOTT, J.—This action was brought in the district court of the third judicial district of Washington Territory, holding terms at Mt. Vernon, by the appellee against the appellant, to recover damages in the sum of $7,575 for an alleged breach of a contract entered into between the appellant and appellee, by which the appellant let to the appellee, for certain terms of years mentioned in said contract, certain lands therein described, and, in consideration of the sum of $1.50 per thousand feet stumpage, sold and gave him license to cut saw-logs, piles and spars upon said lands during said time; and further agreed to furnish to said appellee, at the reasonable market price, all the provisions and logging supplies needed by him during the continuance of said contract. The appellee claimed that he entered upon the performance of his part of the contract, and employed a large number of men, purchased a large number of teams, and invested a large amount of money in camp equipage, tools, etc., and in every respect fulfilled all the conditions of the contract on his part; but that during the months of July and August and the first part of September, 1888, the appellant refused to furnish him logging supplies and provisions, as provided in the contract, and that in consequence of such failure the appellee made thirteen

trips from his logging camp to the place of business of the appellant, at an expense of $195, for the purpose of procuring such supplies, but in consequence of the appellant's failure to furnish them, these trips were made useless; and claimed further that during this period, in consequence of appellant's failure to furnish such supplies, the business of the appellee was interrupted, and his teams compelled to remain idle, to his damage in the sum of $450. The appellee claimed further that the appellant failed and refused to supply him with provisions and logging appliances, as provided in said contract from the 12th day of September, 1888, for a period of six weeks continuously, and that in consequence of such failure the appellee was unable to carry on his business, and was compelled to shut down his camp and suspend his business for a period of six weeks, causing him loss and damage to the amount of $2,000. He claimed further that on the 5th day of June, 1889, at the most advantageous time for logging, the appellant again refused to supply him with provisions and logging appliances as provided in the contract, and notified him it would no longer comply with the terms of its contract, and has ever since failed and refused to do so, and in consequence of such failure the men employed by the appellee abandoned their labors in the camp, and the appellee was unable to procure supplies or subsistence, or to maintain or operate his business to the extent of his ability, and, in place of 45,000 feet of saw-logs per day, which he had been putting into the market, was only able to put in 20,000 feet per day, causing him damage to the extent of $3,000. The appellant joined issue with the appellee upon all the material allegations of the complaint except that of the making of the contract, and the allegation that in the month of June, 1889, it refused to furnish the appellee with supplies and so notified him. The appellant then pleaded in justification of its refusal to furnish supplies to

the appellee in June, 1889, two affirmative defenses, setting up in the first defense breach of the contract by the appellee, and in the second defense breach of a subsequent contract entered into between them for the securing of certain acceptances to be made by the appellant of certain orders by the appellee. The appellee joined issues with the appellant upon these defenses. The case was called for trial at Mt. Vernon on December 9, 1889, in the superior court of Skagit county, which had convened December 2d. The trial occupied several days, and resulted in a verdict and judgment in favor of appellee for the sum of $3,067.50.

The first ground of error claimed by appellant is, that the superior court abused its discretion in refusing to grant a continuance of the cause. Appellant's motion for a continuance was made December 10th, while the trial was in progress, and was based upon the ground that one of its attorneys, Mr. Haller, was not present. Affidavits were filed in support of the motion showing that appellant had made every exertion to have Mr. Haller present; that a few days prior to the convening of said court he had left upon a hunting trip in company with two other gentlemen, none of whom had been definitely heard from for several days, but that it was rumored he, with the others, had been drowned, and the gravest apprehensions were entertained that said rumors were true; that Mr. Haller was the principal attorney for appellant in said matter, and the one upon whom it relied to conduct its defense. (It was subsequently learned that Mr. Haller had, in fact, lost his life as reported.) Counter-affidavits were filed by appellee to the effect that Mr. Haller had said that he would not participate in the trial in consequence of a claim made by appellee that he had counseled with him previous to the commencement of said action as to the matters then in controversy therein; also that on said December 2d ap-

pellee notified Mr. Burke, of the firm of Burke & Haller, that said court was in session and that he intended to have said cause called for trial. The first attorneys who appeared for appellant in the action were Cushing & Dunning, who filed a demurrer to the complaint September 20, 1889. Mr. Cushing was appellant's secretary. On November 23d following, Cushing & Dunning and Burke & Haller filed an answer in the case for appellant, a reply was filed by appellee, and the cause was at issue before the court convened. On December 5th appellant employed Hon. C. H. Hanford, Rochester, Lewis & Gilman and E. C. Million as attorneys for it in said action, and on December 6th C. E. Patterson was also employed as one of its attorneys therein. It appears that the case was called several times during the first week of the session, and was passed at appellant's request, the last time on December 6th, upon a motion by appellant for a continuance to the first of the following week, which motion was granted, with the understanding that it would be the first civil cause called for trial. No exception was taken to this, appellant then expecting to have Mr. Haller present before said time had expired. It appears that appellant acted in entire good faith in the premises and made great exertions to learn where Mr. Haller was, and also insisted upon its right to have him heard if possible as to the matters stated in appellee's affidavits relating to his intended participation in the trial. Upon Monday of the following week (December 9th) the case was called and the parties proceeded to trial. No objection was made thereto by appellant, nor did it then apply for a further continuance. It now contends that it was understood when the trial was commenced that it would take several days within which to complete it, and that appellant expected Mr. Haller would arrive before any material progress had been made therein up to

December 10th, when the rumors of his drowning became rife, and its said motion for a continuance was made.

The second ground of error alleged is in regard to the refusal of the court to permit the appellant to amend its answer, except in one instance on the condition that it pay the costs accrued, and in the other refusing it entirely. It appears that when the trial was commenced appellant asked and obtained leave to amend the answer in several minor matters. Two subsequent applications to amend were made by it. We are unable to gather from the record what the nature of the amendment was that was asked for in the first of the subsequent applications, but it appears to have been granted with the requirement that appellant should first pay the costs accrued. Appellant refused to accede to the terms, and excepted to that part of the ruling imposing them. Its last motion to amend was founded on § 109 of the code, and was made after appellee had rested his case. The amended answer itself, which was then tendered, is not to be found in the record; but it appears by the affidavits which were filed in support of the motion therefor that the purpose was to set up another defense, to the effect that appellant was prevented in the summer of 1888 from furnishing the supplies it had contracted to furnish appellee by reason of the extreme and unusual lowness of the water in the Skagit river during said time, so that the same could not be navigated, and that there was no other way of getting such supplies to appellant's store; that its attorneys who were engaged in the trial only knew of this matter a day or two before the commencement thereof; and that they had supposed up to the time of entering on the defense that the court would permit the proof under the general denial pleaded. Appellee filed affidavits denying any cessation in the navigation of said river during said time, and claimed he could

prove that the same was navigable throughout said season, but that in order for him to do so it would be necessary to have the cause continued so that he could procure the attendance or testimony of witnesses from a distance, and that it would be a great hardship to him if the amendment should be permitted. The court, in considering the motion, said if it was granted it would necessitate a continuance; that appellant had had an opportunity to amend under terms and refused to do so, and he would deny the motion; to which appellant excepted.

All of the foregoing alleged errors are in relation to matters which are addressed to the discretion of courts of original jurisdiction, and in some of the states and in the United States courts, are regarded as so peculiarly fit for the decision of such courts only that the granting or refusing thereof constitutes no ground for an appeal. *Wright v. Hollingsworth,* 1 Pet. 165; *Henry v. Cannon,* 86 N. C. 24; *Westfield v. Westfield,* 19 S. C. 85. Another practice obtains in many of the states, however, and which we think is the better one, of holding them appealable in so far as to correct an abuse of such discretion. But such abuse must be clearly apparent before an appellate court would be justified in reversing a judgment upon such grounds. Considering all the circumstances connected therewith in this case, we cannot say that the action of the lower court in the premises was erroneous or unreasonable.

Another ground of error complained of is as to the allowance of testimony and recovery of damages for the several trips made by appellee from his logging camp to appellant's store for the purpose of procuring supplies, which trips, he claimed, resulted in failures. Appellant contends that damages could not be recovered for more than one of said trips. Appellee testified that the reason he did not get the supplies upon such occasions was because appellant did not have the goods on hand, but in-

formed him the same were constantly expected, and requested him to come at stated times therefor, and that appellant was disappointed from time to time in getting the expected shipment; that upon some of said trips he got a small portion of the supplies he went after, but that he did not get what he needed, and it was claimed such trips were practically failures. Numerous special findings were made by the jury, from which it appears that but two trips were made upon which no supplies were obtained. The jury allowed damages for eight trips in the sum of $90, as follows: For two, $15 each; and for six, $10 each. No allowance was made for the others claimed to have been made. There having been testimony to show that the trips were made with a reasonable expectation of getting the supplies needed, based upon the information furnished by the appellant, it follows that the fault, if fault there was, cannot be held to have been that of the appellee, and there was no error in this respect.

A further point is urged, that the court erred in permitting appellee to introduce testimony as to his inability to procure the needed supplies elsewhere, on the ground that it was inadmissible under the complaint, it not having been alleged therein that appellee attempted to get such supplies from other sources, and that the only allegation in relation thereto was that he could not procure and pay for the supplies elsewhere. Appellant contends the statement that appellee could not procure and pay for the supplies elsewhere cannot be treated as an allegation that he could not procure them, and this of course is true; but the complaint does allege that the appellee was prevented from carrying on his business by reason of the appellant's failure to furnish the supplies it had contracted to furnish him. While the complaint is somewhat faulty in this particular, it seems to us the appellant was apprised by it that proof of this character was to be offered, and that it did not

result in any surprise or injury. It may be fairly understood from the statement—that the appellee was thereby prevented from carrying on his business—that he attempted to procure the supplies from other parties and failed to get them, as that would be the ordinary way of proving such an allegation; and we do not think there was any substantial error here.

Appellant's main contention, however, is as to the damages, if any, appellee was entitled to recover, and this is the most important question in the case. The appellee claimed he should be allowed to recover as damages the value of the logs he could have put in the market during the time after September 12, 1888, when he was compelled to shut down in consequence of appellant's failure to furnish the supplies, less the cost of getting out and handling such logs, and also the value of the logs he could have put in the market in July and August and the first part of September, 1888, and after June 5, 1889, with the full force which he could have operated during said times had the supplies been furnished as contracted, over and above what he did put in with the diminished force, less the cost of getting out and handling such excess. Appellant contends that such damages or profits were too remote, conjectural and uncertain to be estimated; that the same depended upon the continuing ability of the men and teams engaged to perform the same amount of labor; that the weather should remain the same and the market price unchanged; that such damages could be allowed, if at all, only in those cases where there was a stipulation in the contract that the other party should take the proceeds of such labor for a price certain, or where the disposition thereof was provided for by a collateral contract of which the other party had knowledge at the time of entering into the original contract, or where the thing contracted for was to be furnished for a particular purpose, and so understood; and that in the present case

the measure of damages could only be the increased price and extra expense, if any, in procuring the supplies in the market; that the contract provided for nothing more, and that nothing else could be held to have been within the contemplation of the parties. The appellee claimed he had a right to show the known situation of the parties at the time of contracting; the object they had in entering therein; that he was unable to get such supplies from any other source, and that appellant knew thereof when contracting with him. Appellant objected to such testimony upon the grounds that there was no allegation in the complaint that appellant knew appellee could not procure the supplies elsewhere; that the contract itself was the best evidence of what the parties contemplated; and for the reason that it was immaterial. The court allowed the testimony, from which it appeared that appellant was engaged in the mercantile business on the Skagit river; that it was carrying an extensive stock of merchandise, and owned large areas of timber land bordering on said river; that a part of its business was to make money out of its timber, and from its store in furnishing supplies to persons engaged in cutting and hauling timber, and to this end appellant sought to create a market and a demand for its timber and the merchandise; that appellee was an experienced logger, and made logging his business, but that he was financially unable to undertake logging on an extensive scale, and would have to be carried in an undertaking like the present one; that this was known and contemplated by both parties in entering into the contract. The contract itself provided that the supplies should be furnished upon credit, and that appellant should have a preference lien on all the logs and timber cut to secure it for the amounts that should be due for stumpage and supplies, and it bound the appellee to purchase all of his supplies from the appellant during the continuance of the contract, and provided that such indebtedness should be paid out of the proceeds

of such logs and timber by the purchasers at the time of purchase. An *addendum* to the contract provided that after appellee should pay all indebtedness to appellant, and wished to purchase goods for cash, appellant would sell him goods for cash as cheaply as he could purchase elsewhere, and, in case appellant refused to do so, appellee should then be at liberty to purchase in the open market. There was testimony to show that the logs and timber had a general market value, and what that value was; also the number of feet appellee actually got out, and the proportionate additional amount he could have gotten out during the times provided for in the contract had he been furnished with the necessary supplies as agreed upon; and testimony as to the cost of getting out and hauling the logs, and the amount of profit that would have been realized thereon. One of the instructions given by the court to the jury upon the subject of damages was substantially as follows (one paragraph relating to damage claimed by reason of a forced sale of cattle, upon which no point is made, being omitted):

"In this case, that you may arrive at a just verdict, you will consider from the evidence the situation of the parties at the time they entered into the contract as known to each other, and the object they had in entering into the same as made known one to the other, and if you find from a fair preponderance of the testimony that the defendant knew at the time it entered into the contract with the plaintiff that the plaintiff was unable to carry out the terms of his contract unless defendant would supply him the provisions and supplies needed by the plaintiff mentioned in the contract, and, so knowing, it allowed plaintiff to enter upon the land mentioned in the contract, and to construct thereon extensive logging roads and other improvements, to purchase teams, tools, etc., necessary to successfully carry on said logging business, and that plaintiff did actually construct, or cause to be constructed, extensive logging roads upon said premises, and purchased teams, tools, etc., for said purpose, and that the parties to

said contract entered into said contract for the purpose of
making profits, and after plaintiff had expended consider-
able means in preparing and constructing logging roads,
and placed the premises in good condition to be success-
fully and profitably logged, the defendant, without any
legal excuse or justification, committed a breach of the
contract by refusing to supply plaintiff with reasonable
and necessary supplies to carry on said business, and that
plaintiff was prevented thereby from continuing his busi-
ness, or that his business was run in a reduced state, so
that he was prevented from producing the same quantity
of logs that he had under the same circumstances produced
immediately prior to the time the defendant refused to
furnish the supplies, if you find it did refuse so to do,
without any legal excuse or justification, then I instruct
you that the measure of damages in this case is the value,
at plaintiff's camp in Skagit county, of that quantity of
logs which represents the difference between what plaintiff
would have produced had the defendant furnished all neces-
sary supplies as alleged and claimed by the plaintiff and
the amount of logs actually produced by said plaintiff,
besides such special damage, if any, plaintiff sustained by
reason of certain alleged trips he made for supplies.  The
jury will estimate the number of days, if any, which
plaintiff's camp was shut down by reason of the alleged
failure of the defendant to comply with the contract dur-
ing 1888, and, having so estimated this time, the jury will
estimate the value at plaintiff's camp at said time of such
quantity of logs, if any, which the plaintiff would have
produced at plaintiff's landing during the time that plaint-
iff was so compelled to shut down; and if you find that
plaintiff was compelled by reason of the alleged breach of
contract by the defendant to operate and run his camp,
during any time in 1889, upon a reduced or diminished
scale from that which he would have operated and run the
same had such alleged breach not occurred, the jury will
then estimate the time during which the camp was operated
by the plaintiff upon said reduced scale.  And I charge
you that, if you find by a preponderance of the evidence
that the plaintiff has been damaged at this last mentioned
time by reason of the alleged breach of contract on the

part of defendant, that you will arrive at the measure of damages as follows: Having found the time he was compelled to operate said camp on a diminished scale, you will then find the quantity of logs, if any, which plaintiff would have produced at his landing had said alleged default in said contract not occurred, and from this quantity so ascertained by you you will deduct the quantity of logs actually produced at said place by defendant during the time he was so compelled to operate upon said reduced scale, and the value at the plaintiff's landing in said county of the difference between these two quantities thus ascertained will be the measure of damages which the plaintiff sustained by reason of said breach of said contract, if any he did sustain."

In addition to its other objections as to the measure of damages, appellant argues that this instruction was erroneous upon two other grounds —*first*, that it, in effect, allowed appellee to recover pay twice for his time in making futile trips for supplies; in also allowing him pay for what he could have done in the way of getting out logs during said time had the supplies been furnished and the trips not have been made; *second*, that the jury was not instructed to deduct the cost of producing the excess which it was claimed could have been gotten out but for the fault of appellant, from the value of such excess. As appellant did not assign the first point as error in its brief, but only called attention to it in the oral argument, and as we are not entirely satisfied from what we have been able to gather from the record that the output of logs would have been necessarily diminished by the absence of the person and team engaged in making the trips, we will not disturb the verdict in the premises. The second point is disposed of by another instruction, where the court told the jury that the cost of getting out the excess should be deducted, and by the fact that the jury did deduct the cost thereof from the value of such logs, as appears by their special findings.

As to the inadmissibility of the evidence objected to

under the pleadings, while the complaint did not contain a direct allegation that appellant knew the appellee was unable to procure supplies elsewhere, it did contain the following statement:

"That, at the time of purchasing said timber from the said defendant as aforesaid, plaintiff, for want of sufficient means, was unable to employ and pay a requisite number of men and to purchase the extra number of teams and tools necessary for plaintiff to have to enter upon said described premises and to make logging roads thereon so as to transport said timber to market, and to purchase a sufficient supply of goods, wares, and merchandise to enable plaintiff to carry on so extensive a logging business and remove said timber from said described premises during the limited period aforesaid; and in order to induce the said plaintiff to purchase said timber from the said defendant, and to induce the said plaintiff to remove the said timber from the said premises aforesaid within the respective periods of time aforesaid, and in consideration of the said plaintiff's purchasing said timber and agreeing to remove the same within the time aforesaid, the said defendant then and there contracted and agreed to and with the said plaintiff to furnish plaintiff with the means with which to employ and pay men, purchase teams, tools, etc., to properly conduct and carry on said business, and to sell, furnish and deliver to said plaintiff all the provisions and logging supplies needed by said plaintiff upon credit."

There was testimony also to show that the parties had transacted business with each other before entering into this contract, and appellant's vice-president testified that at the time the contract was made appellant knew Cole had no money, and that it would have to back him in the enterprise, and knew he could not get along without such assistance. From all the circumstances connected with this matter, we are satisfied appellant did not sustain any injury therein.

As to the basis upon which appellee was entitled to recover damages, a long list of authorities was presented by

each party, which it is difficult, if not impossible, to harmonize. The position taken by appellee and sanctioned by the superior court is sustained by a number of cases very similar to this one. If the appellant, when it entered into this contract, knew that the appellee was unable to obtain these supplies elsewhere, and that he could not carry on the undertaking without its assistance, and knew when it ceased furnishing the same that the result would be to compel appellee to abandon the enterprise, or to seriously embarrass him in the further execution thereof, it must be held to have contemplated the direct and presumable results of its own wrongful act, and to be answerable in damages therefor. Nor do we think the damages too uncertain or conjectural to be estimated, within the trend of the better authorities. The trees were there from which the logs, spars and piles could be manufactured; and at the time of the breaches there was the benefit of past experience— the known results of previous efforts in carrying on the work—from which to form an estimate of what could have been done thereafter had the supplies been furnished. The timber itself when gotten out was a staple commodity, with a market value not subject to any sudden or great fluctuation, and this value was easily susceptible of proof. Indeed, some of the cases go to a much greater extent than it is necessary to go in this case to sustain the rule of damages adopted at the trial. Of the authorities presented upon the question of damages we cite the following as supporting this case: *Shepard v. Gaslight Co.*, 15 Wis. 349; *Booth v. Rolling Mill Co.*, 60 N. Y. 487; *Richardson v. Chynoweth*, 26 Wis. 656; *Hammer v. Schoenfelder*, 47 Wis. 455 (2 N. W. Rep. 1129); *Crescent Mfg. Co. v. N. O. Nelson Mfg. Co.*, 100 Mo. 325 (13 S. W. Rep. 503); *Houser v. Pearce*, 13 Kan. 104; Benj. Sales, § 870; 1 Suth. Dam., pp. 75, 90, 91, 106–116.

A further error is claimed, that counsel for appellee prejudiced the jury against appellant by repeatedly apply-

ing harsh and opprobrious epithets to it in his closing argument, which abusive language it is claimed was in no wise warranted by the evidence. It seems that no objection was made thereto at the immediate time, but at the close of the argument appellant excepted to the court's permitting said statements to be made, whereupon the court immediately said to the jury that the language was uncalled for, and should under no circumstances affect them or the case, and subsequently reiterated the same in his instructions. Appellant urges that it is the court's duty to supervise the making of an argument, and that it should in this case of its own motion have prevented counsel from repeating the statements complained of without an objection by appellant; that it is not the correct practice for counsel to interrupt another at such a time. Appellee insists that all he did say was fully justified and called for by the testimony, notwithstanding the court's remarks to the contrary to the jury, and, if it was not, that it was waived by a failure to object at the time. In the view we take of the matter, it is not necessary to set forth the statements or to examine the evidence to see whether the same were excusable. Some latitude must be allowed counsel in arguing to the jury. However, the court should, without an objection, prevent counsel from clearly transgressing all reasonable limits therein; yet, as here, where the statements were made under an apparent *bona fide* belief that they were permissible under the proof, if appellant desired to prevent a repetition or continuation thereof it should at least once have called the court's attention thereto by an objection during the argument, otherwise it must be content with the action of the court, when the objection was made, in its doing all it could to prevent the language from having an adverse effect to appellant upon the jury. Judgment affirmed.

ANDERS, C. J., and DUNBAR and STILES, JJ., concur.

HOYT, J. (*dissenting*). — I am unable to agree with the conclusions of the majority of the court as to most of the questions presented by this record; but, as no good purpose would be subserved by an extended discussion of the reasons which control my judgment, I shall content myself with a brief review of two of the many points presented.

*First:* As to the ruling on defendant's motion for a continuance. On the 10th day of December, 1889, defendant filed the affidavit of its secretary, substantially as follows:

"Eugene B. Cushing, being first duly sworn, deposes and says that he is the secretary of the defendant corporation, and, as such officer, is familiar with the business of said corporation; that at the time of the bringing of the above entitled action he retained G. Morris Haller to defend said corporation, with the understanding that he was to have the sole and exclusive conduct and management of this suit, and was to prepare all the pleadings, investigate the testimony, and in every way to prepare the defense to said suit; that upon the settlement of the pleadings plaintiff's counsel objected to the appearance of Mr. Haller in this case on the ground that he had expressed some opinion with relation to some paper or document involved in this suit; that upon a full consultation between Mr. Haller and Judge Burke, his partner, and this affiant, it was decided that there was nothing whatever that could or should in any way prevent Mr. Haller from continuing in the case for the defense, and he then and there promised this affiant that he would do so; and since that time, to wit, about the 10th of November last, affiant again saw Mr. Haller and told him that if there was any doubt about his being able to try this case to be sure to let affiant know so that he could secure other counsel; and that then and there Mr Haller assured affiant that he need have no anxiety about the matter, for he should attend promptly to the case and in every way care for the interests of the defendant corporation and would duly notify affiant when the case would be ready for trial, so as to enable him to have his testimony ready and the defendant's witnesses all present;

that relying upon these promises of Mr. Haller, affiant took no further steps in this matter, and that the first notice that this affiant had that the case was ready or would be called for trial at this term of this court was a telegram which he received from Mr. V. A. Marshall on last Thursday night, December 5, 1889, announcing that this case was set for trial and that Mr. Haller was not present; that thereupon affiant telegraphed Mr. Haller to know if he was attending to the case, and received an answer from Judge Thomas Burke, his partner, that he was absent from home and he could not state where he was or when he would return; that thereupon affiant telegraphed Judge Burke that the defendant was taken wholly and completely by surprise and was in no manner prepared for trial, and asked him to telegraph the court at Mt. Vernon explaining the facts, and to ask a continuance until such time as the defendant could get ready and proceed to trial with safety; that thereafter affiant received a telegram from V. A. Marshall on the night of Saturday, December 7, 1889, saying that the court would not grant a continuance and for affiant to come to Mt. Vernon immediately; that thereupon affiant took the first possible conveyance and arrived at Mt. Vernon Monday afternoon, December 9, 1889, after the trial of this case had commenced; that affiant is credibly informed that G. Morris Haller, aforesaid, started upon a hunting trip about two weeks ago with the avowed intention of returning in a few days, and of being present at this term of the court to attend to such cases as he was counsel in, and affiant is further credibly informed that the friends of Mr. Haller are now greatly alarmed about his safety and express great fears that he may have lost his life, as his long absence and continued silence are so much at variance with his expressed determination to return in a few days. Affiant further states that the defendant has made no preparation whatever for the trial of this cause, having relied wholly upon Mr. Haller to inform it when to take the necessary steps, which information it has never received; and affiant states that to be compelled to continue the trial of this cause at the present time would be unjust and oppressive, and work irreparable injury and hardships to defendant. Affiant further states

that defendant should be given a reasonable time in which to acquaint counsel with the facts in this case, which involves a long period of time, to wit, about four years, and the investigation of long and complicated accounts, and involving a very large sum of money, to wit, more than fifteen thousand dollars. And affiant further states that, at the time he retained the said G. Morris Haller, he, the said affiant, made a full, true and complete statement of the facts constituting the defense in this action, and that then and there his said counsel advised him that said defendant corporation had a full and complete defense to said action, all of which said affiant did then and does now verily believe to be true. And affiant states that the defendant has in no manner been negligent in this behalf, but has used every effort and diligence to be prepared for the trial of this case when it should be called for trial."

This affidavit was corroborated by several other affidavits, and was absolutely uncontradicted, for though in the affidavits filed in opposition to the motion certain statements of said Haller and of his partner were set out, yet there was absolutely no proof that the intentions of said Haller or Burke, as stated by them, had ever been in any way communicated to any of the officers or agents of said defendant. After examining all of the affidavits filed I have been unable to find that there was any substantial dispute as to the facts stated in the affidavit above set forth. This affidavit was supported by those of all the attorneys of said defendant present at the trial, to the effect that they were not prepared to try the case, and that the rights of the defendant could only be protected by a continuance of the cause. In addition to the above it appeared, before the question of continuance was finally disposed of, that the said Haller had been drowned on or about December 2d. On this showing I think that the motion for continuance should have been granted. The object of the law and of the institution of courts is that there may be a fair trial and a right determination of all alleged causes of action,

and whenever this court is satisfied that, by the action of the lower court, a party has been deprived of the opportunity to fairly present his cause, it should order a new trial. I think the facts proven upon such motion for continuance show that without it the cause could not be fairly tried, and that therefore there should be a new trial.

*Second:* As to the rule of damages authorized by the contract as applied to the facts proven upon the trial. The conditions of the contract which bear upon this question are vague and indefinite, and it might well be held thereunder that no breach could be assigned thereon. There was an absolute want of the usual conditions of exactness and certainty. The agreement simply provided on the one part that supplies should be furnished, and on the other part that they should be accepted and paid for, but as to the amount of such supplies, or the time when or place where they should be thus furnished and accepted, the contract was entirely silent. If these conditions could be enforced at all they must be mutual. Now, suppose the plaintiff had made up his mind not to take the supplies of the defendant, and the defendant had decided to bring an action to compel such taking or to recover damages, could it maintain such action? If it could not, then it must follow that the plaintiff could not successfully allege a breach of such conditions. It is not necessary for the purpose of this discussion that I should come to a conclusion as to the above inquiry, as from my interpretation of the contract the measure of damages adopted by the lower court was wrong, even if the contract was held to be sufficiently certain to support an action for the breach thereof. There was nothing in the contract or in the proof at the trial to show that any of the supplies contemplated by the contract could not be obtained in the open market, and therefore the general rule as to damages would be the difference between the contract price and the price in the open mar-

ket; and, there being in this case no contract price other than the market price, there could be no damage.

It is claimed, however, that the contract, when viewed in the light of the circumstances surrounding the parties at the time it was entered into, as disclosed by the proof, shows that the parties clearly contemplated other than the usual responsibility in regard to such furnishing of supplies by the defendant. I am unable to see that this claim has any foundation, as the plain conditions of the contract show that the agreement to furnish and take the supplies in question was mutual, and that the defendant was as much moved to enter into the contract by the agreement of the plaintiff to get his supplies of it as the plaintiff was by its agreement to furnish the same. But if it is conceded that said contract was all that the plaintiff claimed, and that thereunder the defendant became an absolute warrantor that such supplies would be furnished as stated therein, yet the measure of damages adopted seems to me to be wrong. The defendant had no control over the magnitude of the operations of the plaintiff, and had not contracted to supply any particular grade or kind of camp; and the simple fact that the plaintiff had established his enterprise upon a particular scale would no more compel the defendant to supply that particular scale than any other; and if the rule of damages laid down in this case is sustained, the plaintiff could have doubled the amount of his recovery by having instituted his enterprise on a scale as large again as he did. If the defendant was liable for the loss of prospective profits growing out of the reduction of his force from forty to twenty men, he would have been likewise liable if the force had been reduced from eighty to ten men. It seems to me impossible that the parties could have contemplated such a construction of the contract that the damages for a breach thereof could thus be increased or decreased at the will of one party without the act or consent of the other.

I shall not attempt to review the cases cited by the majority of the court more than to say that I have carefully examined them all, and I do not think any of them sustain the doctrine approved in this case. If the contract as to supplies was enforceable at all, the highest measure of damages that could be sustained, upon any theory of the case, would be the actual loss suffered by reason of a breach thereof; and of this actual loss prospective profits could form no part. Such actual loss would, in ordinary cases, be the difference between what the supplies were to be furnished at and what it cost to procure them elsewhere. But if it appeared that it was known to the parties that it would be impossible for the plaintiff to get the supplies elsewhere by reason of want of money or credit, and in the light of such knowledge the defendant supplied plaintiff and allowed him to incur large expense by way of making roads, etc., in anticipation of getting in logs under the contract, and then, knowing these facts, refused to supply him longer, defendant should, for such refusal, be held liable to plaintiff for the money thus expended by him in the prosecution of the enterprise, less any sums he had received on account thereof. Even if the rule of damages approved by the majority of the court is correct upon the facts found, it could not avail plaintiff, for the reason that the complaint is insufficient to authorize the introduction of proof as to the knowledge of defendant of the condition of plaintiff. In my opinion the judgment should be reversed, and a new trial ordered.