87 P.3d 1169 (2004)
151 Wash.2d 265
STATE of Washington, Respondent,
v.
Charles R. DOWNING, Petitioner.
No. 73085-7.
Supreme Court of Washington, En Banc.
April 15, 2004.
*1170 Susan F. Wilk, David L. Donnan, Seattle, for Petitioner.
Kimberly Anne Thulin, Royce Scott Buckingham, Laura D. Hayes, Bellingham, for Respondent.
Jacqueline McMurtie, Seattle, for Amicus Curiae (The Innocence Project Northwest).
David Allen, Cassandra L. Stamm, Allen, Hansen & Maybrown PS, Seattle, for Amicus Curiae (Wash. Ass'n of Criminal Defense Lawyers).
CHAMBERS, J.
Charles R. Downing was convicted by a jury of first degree child molestation. He seeks reversal of an unpublished opinion by Division One of the Court of Appeals upholding his conviction. Downing claims the trial court abused its discretion by denying his request for a continuance to secure an expert witness. Downing also argues that the denial violated his rights to due process and compulsory process under the state and federal constitutions. We do not agree with the Court of Appeals' conclusion that our holding in State v. Swan, 114 Wash.2d 613, 656, 790 P.2d 610 (1990), rendered the defense expert's testimony "unhelpful" as a matter of law. We affirm because the trial court did not abuse its discretion.

FACTS
On December 22, 1999, Downing was charged with first degree child molestation against L.B. L.B. was six years old at the time of the alleged incident and seven years old at the time of trial.
After learning that L.B. had engaged in inappropriate sexual behavior with a younger relative, her mother asked where she learned such behavior. L.B. responded that she had learned if from "Chuck," who is "her dad's neighbor." Report of Proceedings (RP) at 261. L.B.'s parents are separated. While L.B. spends most of her time with her mother, she frequently visited her father at his home during the spring of 1999. Downing lived next door to L.B.'s father.
L.B.'s mother immediately contacted law enforcement. L.B. consistently stated that one weekend while visiting her father, Downing gave her a ride on his four-wheeler, placed both his hands down the front of *1171 her pants at some point during the ride, and after the ride, kissed her on his bed in his camper before she ran back to her father.[1] In an interview with detectives, Downing confirmed that he had given L.B. a ride on his four-wheeler one spring weekend. Although he repeatedly denied that any inappropriate contact occurred, Downing responded that he could not remember whether his hand had ever touched L.B.'s "bare vagina." RP at 305-07.
Trial was initially set for March 20, 2000, but was continued multiple times, including three times at Downing's request. Trial began on March 12, 2001. Prior to trial, L.B.'s mother introduced her to Downing's daughter and granddaughter, who had also alleged Downing abused them.[2] L.B.'s mother also took her to watch the jury return its verdict in the trial regarding the granddaughter's allegations against Downing. L.B. was told that Downing "did the same thing" to his daughter and granddaughter, but she was not told the specific details of their allegations against Downing. Downing's defense counsel was surprised to learn about these contacts on March 12, 2001, moments before the pretrial hearings on L.B.'s competency and the admissibility of her out-of-court statements.
At the pretrial competency hearing, defense counsel urged the trial court to find L.B. incompetent. The defense's argument rested, in part, on the assertion that L.B.'s independent recollection had been tainted by her contact with Downing's family. After considering the evidence and the parties' arguments, the trial court found L.B. clearly competent to testify.[3] Additionally, the trial court found her out-of-court statements admissible.
Trial began the next day and a jury was selected. During the lunch hour on the day of trial, defense counsel was able to reach Dr. John C. Yuille by telephone. Dr. Yuille had previously been consulted as an expert with regard to Downing's case. Upon learning that L.B. had contact with other alleged victims, he expressed concern that the contact "could very, very easily taint the testimony of [L.B.]." RP at 221. Before opening statements and outside the jury's presence, defense counsel moved for a continuance in order to secure Dr. Yuille's testimony regarding the potential effect contact with other alleged victims could have had on L.B.'s independent recollection of events.[4]
The State argued that the expert's testimony was not relevant to the reliability of the child's hearsay statements because the statements were made to her mother and the deputy prior to any contact with Downing's daughter and granddaughter. Despite this inappropriate and potentially tainting contact, *1172 the trial court concluded that any taint occurred after L.B.'s out-of-court statements and they were admissible. The only difference between the statements L.B. made prior to her contact with Downing's family and those she made in court after contact was the number of times that Downing stopped the four-wheeler to place his hands down the front of her pants. Before the contact with Downing's family, L.B.'s statements suggested that he had stopped the four-wheeler only once to place his hands down her pants. However, her statements in court alleged that he placed his hands down her pants several times during the ride. The trial court denied the motion for a continuance on the grounds that the defense had not made a showing of prejudice because the only change in L.B.'s testimony was the number of times the defendant touched her, which "really hurt the prosecution rather than hurt the defense." RP at 224.
Defense counsel later asked the trial court to reconsider the motion for a continuance.[5] Again, finding L.B.'s statements before and after the inappropriate and potentially tainting contact with Downing's family are substantially similar and no prejudice had been shown, the trial court denied the motions.
At the conclusion of the State's case, Downing did not testify, and the defense rested without presenting any witnesses. The jury found Downing guilty.
Downing appealed his conviction, and Division One of the Court of Appeals affirmed. State v. Downing, noted at 113 Wash.App. 1009, 2002 WL 1868089. The court below concluded that, although Downing's counsel acted diligently under the circumstances, the trial court did not abuse its discretion. First, it reasoned that Dr. Yuille's testimony would not have helped the trial court acting as the finder of fact with regards to L.B.'s competency because the fact that children are suggestible is known to the average person. Downing, 113 Wash.App. 1009, 2002 WL 1868089, at *3 (quoting Swan, 114 Wash.2d at 656, 790 P.2d 610). Next, the court below reasoned that Downing's offer of proof failed to "explain how L.B.'s testimony could be tainted when it appeared not to be." Id. Downing sought and we granted discretionary review of the Court of Appeals decision. State v. Downing, 149 Wash.2d 1017, 72 P.3d 761 (2003).[6]

ANALYSIS
The primary issues in this case are whether (1) the trial court abused its discretion by denying Downing's request for a continuance, and (2) the trial court's denial violated Downing's rights to due process and compulsory process under the state and federal constitutions.

MOTION FOR CONTINUANCE
In both criminal and civil cases, the decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. State v. Miles, 77 Wash.2d 593, 597, 464 P.2d 723 (1970). Since 1891, this court has reviewed trial court decisions to grant or deny motions for continuances under an abuse of discretion standard. State v. Hurd, 127 Wash.2d 592, 594, 902 P.2d 651 (1995); Skagit Ry. & Lumber Co. v. Cole, 2 Wash. 57, 62, 65, 25 P. 1077 (1891).
We will not disturb the trial court's decision unless the appellant or petitioner makes "a clear showing ... [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971) (citing MacKay v. MacKay, 55 Wash.2d 344, 347 P.2d 1062 (1959)).
*1173 In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure. State v. Eller, 84 Wash.2d 90, 95, 524 P.2d 242 (1974); RCW 10.46.080; CrR 3.3(f). However, trial courts must also compare any detriment to a child victim that might be caused by a continuance with the compelling reasons for continuing the trial. See RCW 10.46.085.
In the case at bar, Downing moved for a continuance in order to secure expert testimony for the express purpose of reconsidering the trial court's ruling that L.B. was competent to testify. Thus, on review, we compare the reasons for granting the continuance and reopening the issue of L.B.'s competency against the reasons for denying the motion to determine if the trial court abused its discretion. See Carroll, 79 Wash.2d at 26, 482 P.2d 775.
Downing argues that the trial court abused its discretion because defense counsel made a sufficient showing of surprise by the new evidence, diligence in securing an expert witness, and materiality of the expert's proposed testimony. The record reflects Downing's counsel was surprised to learn L.B. had contact with other alleged victims; and as noted by the Court of Appeals, defense counsel diligently secured an expert witness the following day. Downing, 113 Wash.App. 1009, 2002 WL 1868089, at *2. The parties disagree as to whether Dr. Yuille's testimony was material to the trial court's competency finding.
While we affirm the Court of Appeals and uphold Downing's conviction, we do not adopt the reasoning of the court below based upon our holding in Swan. In the companion case, State v. Willis, No. 73345-7, 151 Wash.2d 255, 87 P.3d 1164, 2004 WL 793166 (Wash. April 15, 2004), we clarify with a more detailed analysis that Swan does not bar expert testimony otherwise admissible under ER 702. However, for the reasons below, we cannot say that the trial court abused its discretion.
The trial court did not base its decision on a lack of surprise or diligence. Thus, the mere existence of those factors does not require reversal. Cf. State v. Williams, 84 Wash.2d 853, 855, 529 P.2d 1088 (1975) (holding it is an abuse of discretion to deny a continuance based on a lack of due diligence when the defense has shown it exercised due diligence). Neither did the trial court deny that children's independent recollections could be tainted by contact with other victims through stereotype induction, vilification of the defendant, and peer pressure. Rather it found that taint had not occurred in the present instance because L.B.'s statements before and after contact were substantially the same. See RP at 224, 319. Nor did the trial court interpret Swan as a complete bar to Dr. Yuille's testimony. Instead, it found expert testimony unnecessary because L.B.'s statements had not changed.
Although Downing's counsel was surprised and did act diligently to secure an expert, the trial court concluded that a continuance was unnecessary because Dr. Yuille's testimony would not change the fact that L.B.'s statements before and after the potentially tainting contact were consistent. Thus, the reconsideration of L.B.'s competency to testify would not likely have led to a different result based upon Dr. Yuille's testimony. While reasonable minds may differ, we cannot say that the trial court's determination that the maintenance of orderly procedure outweighed the reasons favoring a continuance, such as surprise and due diligence, was manifestly unreasonable. Therefore, Downing has failed to meet his burden on review, and we will not disturb the trial court's decision.

DUE PROCESS AND COMPULSORY PROCESS
We have previously recognized "that failure to grant a continuance may deprive a defendant of a fair trial and due process of law, within the circumstances of a particular case." Williams, 84 Wash.2d at 855, 529 P.2d 1088 (citing State v. Cadena, 74 Wash.2d 185, 443 P.2d 826 (1968)). Additionally, a denial of a request for a continuance may violate a defendant's right to compulsory process if the denial prevents the defendant from presenting a witness material to his defense. Eller, 84 Wash.2d at 95, 524 P.2d 242. Whether the denial of a continuance *1174 rises to the level of a constitutional violation requires a case by case inquiry. Id. at 96, 524 P.2d 242 (citing Cadena, 74 Wash.2d 185, 443 P.2d 826); (Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).[7]
The existence of due diligence alone does not determine whether a constitutional right has been violated by the denial of a continuance. Compare Eller, 84 Wash.2d 90, 524 P.2d 242 with State v. Edwards, 68 Wash.2d 246, 412 P.2d 747 (1966). In Eller, this court found the defense counsel acted diligently to secure the attendance of a witness after "the State's belated production of the undercover agent." Eller, 84 Wash.2d at 96, 524 P.2d 242. Yet, we held the trial court's denial of the request for a continuance was not a constitutional error because the testimony of the witness sought by the defense would have been merely cumulative of the evidence already adduced at trial. Eller, 84 Wash.2d at 96, 98, 524 P.2d 242. Whereas in Edwards, the inquiry turned on defense counsel's diligence by issuing subpeonas to compel attendance of witnesses who failed to appear, and thus the denial of a continuance violated the defendant's right to compulsory process. Edwards, 68 Wash.2d at 258, 412 P.2d 747.
The facts of Downing's case bear a closer resemblance to those in Eller than Edwards. In both cases, defense counsel acted diligently in response to an action by the prosecuting attorney: belated production of a witness in Eller and allowing, if not facilitating, the introduction of the primary witness to other alleged victims in Downing. In both cases, the trial court found continuances to be unnecessary: because the witness's testimony would have been cumulative in Eller and because the witness's testimony would not have changed the fact that the witness's statements were consistent before and after the potentially tainting contact in Downing. We hold the trial court did not violate Downing's constitutional rights by denying his request for a continuance.

CONCLUSION
We hold the trial court's denial of Downing's request for a continuance to secure expert testimony for the purpose of reconsidering L.B.'s competency as a witness was neither an abuse of discretion nor a violation of Downing's constitutional rights to due process and compulsory process. We affirm the Court of Appeals.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ.
SANDERS, J. (dissenting).
Both the federal and state constitutions guarantee a criminal defendant the right to call witnesses on his or her behalf. U.S. CONST. amend. VI;[1] CONST. art. I, § 22;[2]see also Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Maupin, 128 Wash.2d 918, 924, 913 P.2d 808 (1996).
Dr. John Yuille agreed to testify on Charles Downing's behalf once defense counsel informed him of L.B.'s contact with other alleged victims. Despite due diligence, the defense did not learn of this contact until the day before trial. 2 Report of Proceedings (RP) at 220. Dr. Yuille would have testified to his "grave concerns regarding the effect [L.B.'s contact with other alleged victims of Downing's abuse] may have on [L.B.'s] ability to independently recollect the events reported, and the possibility of her testimony being tainted by her knowledge of other alleged victims." Clerk's Papers (CP) *1175 at 98. He further would have testified "that young children are particularly suggestible and that [L.B.'s] testimony could readily be tainted by being told that other people had been hurt by Mr. Downing." CP at 49.
The majority claims the trial court denied Charles Downing's continuance since "it found expert testimony unnecessary because L.B.'s statements had not changed." Majority at 1173. But to the contrary the trial court grounded its decision to deny Downing's motion for a continuance on notions of prejudice:
THE COURT: The motion for continuance will be denied. I see no reason for it at all. There is no prejudice shown here. The statements made by the little girl, if they have changed at all, really hurt the prosecution rather than hurt the defense. And the only apparent change, as I understand it, is the fact that the young girl said three or four times as opposed to one time in ain a prior statement. So based upon that, there's no showing of prejudice. The motion for continuance will be denied.
2 RP at 224. Nowhere in the trial court's articulated reasons for denying Downing's motion is there any indication Dr. Yuille's proffered testimony was irrelevant or inadmissible. Were such testimony inadmissible, I might be inclined to agree a continuance would have been unwarranted. See State v. Thomas, 150 Wash.2d 821, 857, 83 P.3d 970 (2004). However there was no such determination here and Dr. Yuille's proffered testimony was indeed relevant and otherwise admissible.
Relevant evidence is that which has any tendency to make the existence of any fact of consequence to the case more or less probable than without the evidence. ER 401; Thomas, 150 Wash.2d at 858, 83 P.3d 970. This threshold for relevancy is low, and "[e]ven minimally relevant evidence is admissible." State v. Darden, 145 Wash.2d 612, 621, 41 P.3d 1189 (2002). Dr. Yuille's testimony went straight to the credibility of L.B., the complaining witness. The assumption L.B. undoubtedly would have maintained her story had she never met the other alleged victims is not necessarily justified. A child who allegedly has been sexually abused may testify to a completely different story at trial than what he or she previously told others. E.g., State v. Clark, 139 Wash.2d 152, 155, 985 P.2d 377 (1999) (witness testifies at trial her hearsay statements accusing defendant sexually abused her were lies).
Prior to the contact, L.B. stated Downing had touched her only once. 1 RP at 174. But after witnessing the verdict, she testified at the competency hearing Downing touched her as many as 4 times, 1 RP at 164, and at trial she testified Downing touched her as many as 10 times, 2 RP at 298. The expert testimony of Dr. Yuille might have led the jury to believe L.B. was less credible, had originally imagined the account, and then bolstered her story upon meeting the other alleged victims and witnessing the verdict in that case. Perhaps the jury could have reached the same conclusion as it did below. However that is for the jury to decidenot this court.
It is true, as the majority articulates, trial courts generally have the discretion to grant or deny continuances. State v. Adamski, 111 Wash.2d 574, 577, 761 P.2d 621 (1988); accord majority at 1172. But such discretion is abused when the trial court's decision "is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wash.2d 822, 830, 845 P.2d 1017 (1993). Denying a defendant's motion for a continuance to secure the testimony of a witness because the defendant will not be prejudiced by the denial is based on an untenable ground when a reasonable inference from the testimony would aid the defense.
The refusal to grant a short continuance prejudiced the defense, and accordingly, I dissent.
NOTES
[1] L.B. made these statements to her mother, to Whatcom County Sheriff's Deputy James Smith, and at trial. Specifically, L.B. testified:

Q Okay. And what happened next?
A Chuck asked if I wanted to go on a ride with him.
Q What did you say?
A Yes, and my dad said, yes, too.
. . . .
Q What happened next?
A Chuck put his hands in my pants.
RP at 286.
A Wehe took me down to histo alike, a trailer by his house.
Q And what happened next?
A He told me to go inside.
Q Did you do that?
A Yes.
Q What happened then?
A He told me to sit on the bed.
. . . .
Q And what happened next?
A He kissed me.
RP at 289.
[2] L.B. first met Downing's daughter and granddaughter at the prosecuting attorney's office. The parties dispute whether the prosecutor introduced L.B. to Downing's family, and the record does not resolve the dispute.
[3] The trial court stated:

While I appreciate counsel's argument, I don't think competency is an issue at all. She spoke very clearly; she seemed to have a real good recollection of everything that took place. The only thing that there seemed to be some confusion about is how many times he had touched her.
RP at 195.
[4] Defense counsel may have made the motion to continue in the trial court's chambers during or after the pretrial hearings the day before but was putting the motion on the record the day of trial. See RP at 220 ("Do you want me to put my motion on the record?" Defense counsel); RP at 224 ("I'd ask the Court to deny it as you did in chambers." Prosecution).
[5] It was unclear, at least to the prosecution, whether the motion to continue was for the purpose of reopening the issue of competency or reliability of hearsay statements or to secure an expert for trial. However, defense counsel made clear the purpose for the motion to continue when she stated:

I've already asked the Court for a continuance to have an expert come in to reopen the issue of child competency based on taint, which I learned about; that's been denied.
I renew my motion to bring in an expert.
RP at 318-19.
[6] The Washington Association of Criminal Defense Lawyers and the Innocence Project Northwest filed an amicus curiae brief in support of Downing's contention that the Court of Appeals misread our holding in Swan.
[7] The Eller court noted:

[T]here are no mechanical tests for deciding when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result; and, that the answer must be found in the circumstances present in the particular case.
Eller, 84 Wash.2d at 96, 524 P.2d 242 (citing Cadena, 74 Wash.2d 185, 443 P.2d 826).
[1] "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." U.S. CONST. amend. VI.
[2] "In criminal prosecutions the accused shall have the right ... to have compulsory process to compel the attendance of witnesses in his own behalf...." CONST. art. I, § 22.