IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

THE STATE OF WASHINGTON,       )       No. 75217-1-I
                               )
        Respondent,            )
                               )
        v.                     )       UNPUBLISHED OPINION
                               )
LEONEL CRUZ ROCHE,             )
                               )
        Appellant.             )       FILED: September 25, 2017
_____)

SCHINDLER, J. — Leonel Cruz Roche seeks reversal of the jury convictions of

rape in the second degree domestic violence, assault in the second degree domestic

violence, and felony harassment domestic violence. Roche claims the trial court

abused its discretion and violated his constitutional right to due process by denying his

mid-trial motion to continue the trial to investigate whether to assert a diminished

capacity defense. In the alternative, Roche claims his attorney provided ineffective

assistance of counsel.[1] We affirm.

Charges

Beginning in 2012, Leonel Cruz Roche and Tammy Traughber were in a

romantic relationship. Although not legally married, Roche and Traughber considered

_____
[1] Roche also asserts the sentence exceeded the statutory maximum and requests denial of
appellate costs. Because the trial court amended the judgment and sentence to correct the statutory
maximum and the State does not seek appellate costs, we need not address these issues.

themselves husband and wife. Roche and Traughber were homeless, lived in a tent, and frequently used alcohol and cocaine.

One evening in late January 2015, Roche and Traughber drank alcohol and used cocaine. Roche referred to an "invisible boyfriend" in the tent and accused Traughber of cheating on him. Roche told Traughber, "[I]f you leave me, I'll find you and I'll kill you." Roche asked Traughber if she wanted to know "how it feels to be raped." Traughber said, "No," but Roche covered her mouth, held her down, and forcibly penetrated her vagina. Roche threatened to kill Traughber if she told anyone.

The next day, Traughber went to the King County Law Enforcement Assisted Diversion (LEAD) office to get help and find housing. LEAD located temporary housing at a motel in Kent while Traughber waited for placement in clean and sober housing.

On March 22, Traughber felt lonely and called Roche. When a woman answered the phone, Traughber left angry messages accusing Roche of cheating and threatening him. Traughber later realized she had initially dialed the wrong number and the woman she spoke to was not associated with Roche. Traughber called Roche and invited him to come to the motel in Kent. Over the next four days, Roche and Traughber used alcohol and cocaine and engaged in consensual sex.

On March 26, Traughber and Roche bought drugs. The couple then returned to the motel and smoked crack cocaine and drank alcohol. When Traughber called her brother-in-law, Roche got angry. Roche took the phone and yelled at the man, "[W]ho are you, where are you at, . . . how do you know my wife?" Traughber explained the man on the phone was her brother-in-law but Roche accused her of cheating. Roche punched Traughber, threw her down, got on top of her, and began to strangle her.

2

Roche told Traughber, "You're fixing to die, bitch. You're gone." Traughber lost consciousness.

When Traughber regained consciousness, Roche was still on top of her and she struggled unsuccessfully to push him off. Traughber finally said, "I give up. Please stop. I give up." Roche got off of Traughber and told her he wanted to have anal sex. Traughber said, "No." Roche responded, "Bitch, you dead. You — you gonna die anyway. It's mine." Because she believed Roche would kill her, Traughber took off her clothes. Roche held Traughber on the bed with his arm on her neck and raped her, first anally and then vaginally.

After Roche left the motel room the next morning on March 27, Traughber contacted LEAD case manager Daniel Garcia. Garcia told her to call the police and he was on his way. Traughber called the police and reported the assault and rape. The police interviewed Traughber, collected evidence, and took photographs of Traughber's injuries. Because Traughber was afraid she would lose her housing, she lied to the police. Traughber told the police that Roche found the motel, surprised her, pushed her into the room, and attacked and raped her.

Motel employee Robert Romero watched Roche leave Traughber's motel room "really quick and scurry around the building." Later, Romero saw Roche across the street from the motel at a store. The police arrested Roche while he was eating popcorn and drinking coffee at the store. "[A] couple days" later, Traughber told the investigating detective that she had invited Roche to her motel room.

On April 1, 2015, the State charged Roche with rape in the second degree domestic violence and assault in the second degree domestic violence. On September 2, the State amended the information to include felony harassment domestic violence.

3

At the time of his arrest on March 27, Roche was taking medications for major depressive disorder with psychotic features. Roche did not receive his medications for the first three months in jail. Roche reported auditory hallucinations and requested medication. On June 22, King County Correctional Facility Psychiatric Services diagnosed Roche with major depressive disorder with psychotic features and prescribed medications. In July and October, Roche told jail psychiatric services the medication was effective and he was well. But in December, Roche told jail staff that auditory hallucinations interfered with his ability to sleep and concentrate. Jail psychiatric services increased the medication dosage.

Trial

At a pretrial hearing on January 11, 2016, defense counsel told the court that Roche was not getting his medications on time. On January 12, Roche refused to go to court because he had not received his medications. Jail health services agreed to administer the morning medications at 7:00 a.m., and the court agreed to recess by 4:00 p.m. so Roche could receive his afternoon medications.

The jury trial began January 19. The State called four witnesses to testify on January 19: Kent Police Department Officer Matt Stansfield, Harborview Medical Center (Harborview) emergency room social worker Christina Heideman, Harborview Sexual Assault Nurse Examiner Courtney Walker, and Harborview emergency room physician Dr. Bryce Meeker.

Officer Stansfield testified that he located Roche after the assault and rape in a store across the street from the motel, drinking coffee. When the officers approached him, Roche asked the officers to examine his hands and his clothing to see "if there was

any evidence of . . . an assault or any injury." Officer Stansfield testified that Roche then played the angry voice mails he had received from Traughber.

Social worker Heideman testified that during the intake interview, Traughber admitted that she invited Roche to her motel room, that they used drugs, and that they engaged in consensual sex for several days. Traughber told Heideman that on March 26, Roche became angry, accused her of cheating on him, and then raped her anally and vaginally.

Nurse Walker testified that she conducted a sexual assault examination and collected DNA[2] samples. During the examination, Traughber admitted she called Roche and invited him to the motel. Walker testified that Traughber had bruises consistent with "cutting off the blood supply around your neck."

Dr. Meeker testified Traughber had bruising on her neck and inner thigh and an abrasion on her face. Dr. Meeker testified that X-rays showed a bone fracture near her eye and nose.

At the end of the first day of trial, Roche told the corrections officers that he would not return to court. After the corrections officers told Roche the court could issue an order forcing him to attend, Roche said, "[N]ot if I'm dead, you can't do that if I'm dead." The jail placed Roche on suicide watch. On January 20, jail psychiatric services removed Roche from suicide watch.

Competency Evaluation

When the trial resumed on January 21, defense counsel told the court that Roche reported auditory hallucinations before trial and after the trial began. Defense counsel

---

[2] Deoxyribonucleic acid.

requested the court order a competency evaluation and continue the trial. The court granted the request and scheduled trial to resume on March 1.[3]

Western State Hospital (WSH) psychologist Dr. Cynthia Mundt issued a competency evaluation report on February 22. In the evaluation, Dr. Mundt cites Washington State Department of Corrections Health Services records to describe Roche's mental health history between 1991 and 2012.

In 1991, Roche was diagnosed by jail mental health services (MHS) with adjustment disorder with mixed emotional features and antisocial personality disorder. MHS prescribed medication for depression and anxiety. After receiving medication, MHS described Roche as "grossly normal with no evidence of thought disorder or other psychotic symptoms." In 1993, MHS notes his symptoms of depression are in remission and Roche requested MHS reduce and discontinue his prescriptions for medication. In 1995, MHS conducted a "full mental status examination" and described his mental state as "unremarkable."

After Roche reported experiencing persecutory delusions and auditory and visual hallucinations in 2005, he received psychiatric services in the community. MHS prescribed antidepressants and antipsychotics. MHS again noted that after receiving medication, Roche's mental state was "unremarkable." MHS reports between 2006 and 2011 describe Roche as "having no signs of psychosis and being polite and cooperative," "normal" with "no current symptoms of mental illness," calm and cooperative in interviews, and stable on medication.

---

[3] The court expressed concern about the availability of the jurors and issued questionnaires to the jury to determine any conflicts. The court was able to retain the sworn jurors to return for the remainder of the trial in March.

After his release from jail in 2012, Sound Mental Health diagnosed Roche with major depressive disorder with psychotic features. Roche engaged in services at Sound Mental Health and regularly obtained medications until his arrest on March 27, 2015.

According to Dr. Mundt, during her interview with Roche, he made "a poor effort to respond appropriately," engaged in "unusual behaviors," and did not cooperate. Roche told Dr. Mundt that he heard two voices on either side of him, one telling him to do good things and the other telling him to do bad things. Dr. Mundt described his description of hallucinations as "unusual" and "similar in nature to those reported by people attempting to malinger mental illness." Dr. Mundt stated that while Roche attempted to "suggest his psychotic symptoms were impairing him," he showed "little difficulty functioning" when on medication. Dr. Munt concluded:

> Overall, it is my clinical opinion that Mr. Roche was attempting to exaggerate his symptoms of mental illness in an effort to appear more impaired and achieve a desired outcome to his present legal circumstances. **In conclusion, it is my opinion that there was no evidence of current mental impairment that would prevent Mr. Roche from understanding the nature of the proceedings against him or assisting in his own defense.**[4]

On February 29, the court held a hearing to address the competency evaluation. Defense counsel told the court that based on the WSH competency report, "[t]he concern that I have is whether at this point I need to obtain an expert to be able to dispute the finding of competency." Defense counsel also noted his "concern" that a comment Traughber made during the defense interview about the January 2015 rape

---

[4] Emphasis in original.

now appeared significant.

> But also, more importantly, in light of testimony that it is anticipated the State will be presenting, at the time it did not appear of great significance when [Traughber] indicated that she believed my client was seeing people in her tent. At the time, I believed that she was referencing that he — that there was a physical person in her — in her tent that related to an assault, which this — which the Court has indicated the State was going to be . . . allowed to offer as [ER] 404(b) type evidence. The concern as it — I can — it — this witness's statements, now it appears, relate to his . . . hallucinations and paranoid beliefs, which Defense was not aware of the extent and the long standing nature of . . . his mental health history.

Defense counsel requested another continuance of three to four weeks to investigate whether to pursue a diminished capacity defense.

> I believe it is incumbent upon the Defense to request the appointment of an expert to determine if . . . there would be expert testimony that I could lay a foundation for as it relates to both the hallucinations and the paranoid delusions that apparently Mr. Roche may have been suffering from at the time of these incidents. Based upon that, I would be having to ask for a continuance of the trial date which is currently scheduled to . . . resume tomorrow.

The State objected to the continuance. The court reserved ruling to review the WSH competency evaluation report.

The next day, the court denied the request for a continuance of the trial "for an additional 3-4 weeks so that [Roche] could obtain an expert to review the [competency] report and investigate" whether to assert a diminished capacity defense. The order states, in pertinent part:

> The Court considered the oral Motion, the COMPETENCY EVALUATION REPORT . . . , the trial briefs filed in this matter, pertinent testimony already given in the case about the defendant's actions and demeanor on the date of the alleged incident, and the defendant's demeanor and statements in open court and finds:
> 1. The defendant is competent to stand trial in this matter;
> 2. The motion for a continuance is denied as . . . untimely and there is no good cause to permit the late filing of such a defense and the defense has not established a basis for

needing expert testimony to address potential testimony of the alleged victim about any past acts.

The trial resumed on March 2. Washington State Patrol Crime Laboratory forensic scientist Jennifer Reid, motel employee Robert Romero, Detective Derrick Focht, LEAD case manager Daniel Garcia, and Traughber testified. The jury found Roche guilty as charged. Roche appeals.

## Motion for Continuance

Roche argues denial of his mid-trial motion for a three to four week continuance was an abuse of discretion and violated his right to due process and compulsory process.

We review a trial court's denial of a motion to continue for abuse of discretion. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). CrR 3.3(f) governs a request for a continuance. "[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." Downing, 151 Wn.2d at 272. The trial court abuses its discretion when its decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Downing, 151 Wn.2d at 272 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

A criminal defendant has a constitutional right to present a complete defense. State v. Armstrong, 188 Wn.2d 333, 344, 394 P.3d 373 (2017). The due process right to present a defense is the right to offer testimony and compel the attendance of a witness. State v. Atsbeha, 142 Wn.2d 904, 923, 16 P.3d 626 (2001). But the right to compulsory process is not absolute. State v. Maupin, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). "[T]he right to present evidence in one's own defense is not utterly unfettered. That evidence must be relevant. There is no constitutional right to introduce

irrelevant evidence." State v. Ellis, 136 Wn.2d 498, 528, 963 P.2d 843 (1998) (citing Maupin, 128 Wn.2d at 925)).

In deciding whether to grant or deny a continuance, the court considers a number of factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure. State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974). The existence of some factors does not require reversal. Downing, 151 Wn.2d at 274.

Roche contends the WSH competency evaluation contained new evidence about his mental history and the attorney acted with due diligence to investigate and obtain an expert on diminished capacity. Roche claims the description of his mental health history in the report combined with Traughber's comment about a statement Roche made about an "invisible boyfriend" in January 2015 supported the motion for continuance and created an inference for a diminished capacity defense. The record does not support his argument.

The WSH competency evaluation report does not contain new evidence to support a diminished capacity defense. The report consistently notes that when taking medication, Roche is stable with no symptoms of mental illness or signs of psychosis. The undisputed record shows Roche was taking prescribed medications when he was arrested on March 27. The King County jail records also describe Roche at booking as "fully oriented." The record shows defense counsel and the court were aware that Roche needed to take medications. Although the court granted the motion for a competency evaluation because Roche reported hallucinations, Dr. Mundt stated that Roche was competent to stand trial and he was attempting to feign psychotic symptoms.

The court also cited the testimony on the first day of trial in support of the denial of the motion for another continuance. Officer Stansfield described Roche at the time of arrest as lucid. Officer Stansfield also testified Roche did not say anything suggesting he experienced delusions or hallucinations.

The court did not abuse its discretion in denying the request to continue to investigate and determine whether to pursue a diminished capacity defense.

Ineffective Assistance of Counsel

In the alternative, Roche argues he received ineffective assistance of counsel because his attorney did not timely pursue a diminished capacity defense.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). "Ineffective assistance of counsel is a fact-based determination, and we review the entire record in determining whether a defendant received effective representation at trial." State v. Carson, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015); Grier, 171 Wn.2d at 34.

To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. Grier, 171 Wn.2d at 32-33. If a defendant fails to establish either prong, we need not inquire further. Strickland, 466 U.S. at 697; State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "Deficient performance is performance falling 'below an objective standard of reasonableness

based on consideration of all the circumstances.' " State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

There is a strong presumption of effective representation of counsel and that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. The defendant has the burden to show that based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. McFarland, 127 Wn.2d at 335-36.

Roche cannot show ineffective assistance of counsel. The record establishes that Roche did not experience delusions or hallucinations on March 26. Nothing in the competency evaluation supports a diminished capacity defense or suggests Roche was suffering from psychosis when he attacked Traughber on March 26.

Further, Roche denied the charges and claimed Traughber was not credible because she lied to the police. A diminished capacity defense admits that the defendant committed the crime. See State v. Clark, 187 Wn.2d 641, 649-51, 389 P.3d 462 (2017) (diminished capacity defense undermines a specific element of an offense— a culpable mental state). Roche cannot meet his burden of establishing ineffective assistance of counsel.

Statement of Additional Grounds

In his pro se statement of additional grounds, Roche also claims his attorney provided ineffective assistance of counsel. Roche argues his attorney failed to obtain evidence to support his assertion that Traughber suffered from mental illness and "instability." Roche states his attorney interviewed Traughber and decided not to pursue

the issue further. But Roche cannot show the absence of any legitimate strategic or tactical reason.

Roche also challenges his attorney's decision not to excuse three jurors. Without a sufficient record, Roche cannot show the absence of a legitimate strategic or tactical reason to excuse the jurors.

The record does not support Roche's argument that his attorney did not cross-examine Traughber on her motive to lie. The record shows defense counsel conducted a thorough cross-examination of the victim. An attorney's decision to pursue a particular line of questioning falls squarely in the realm of trial strategy. In re Pers. Restraint of Davis, 152 Wn.2d 647, 720, 101 P.3d 1 (2004) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel.").

We affirm.

WE CONCUR: