FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 FEB 11 AM 9: 22



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76873-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MCINTYRE, JOSHUA DEAN, | ) | |
| DOB: 08/20/1988, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 11, 2019 |

SCHINDLER, J. — The court convicted Joshua Dean McIntyre of second degree rape of a child and third degree rape of a child. McIntyre challenges denial of his request to continue the stipulated trial and the sentencing hearing and imposition of community custody conditions. We affirm.

FACTS

On October 29, 2015, the State charged Joshua Dean McIntyre with rape in the third degree of 15-year-old L.S. Twenty-six-year-old McIntyre met L.S. by using text message applications.

While the charges were pending, McIntyre had sexual intercourse with 12-year-old B.G. McIntyre communicated with B.G. using social media, text messages, and "video chats." McIntyre and B.G. exchanged nude photographs of each other on their

cell phones. On December 23, 2016, the State filed an amended information charging McIntyre with rape of B.G. in the second degree.

On January 4, 2017, McIntyre stipulated to a bench trial on "agreed documentary evidence," including the affidavits of probable cause. As part of the stipulation, the State indicated its intent to recommend a concurrent sentence of 41 months for rape of a child in the third degree and 158 months for rape of a child in the second degree. McIntyre did not agree with the State's sentencing recommendation. McIntyre stated he intends to obtain a sexual deviancy evaluation and request a special sex offender sentencing alternative (SSOSA). The State objected to a SSOSA.

The court scheduled the stipulated trial for March 24, 2017. On March 22, McIntyre filed a motion to continue the trial until after the completion of the SSOSA evaluation.

> Mr. McIntyre has been evaluated by Michael O'Connell and Mr. O'Connell's evaluation is not yet complete. We expect that Mr. O'Connell's SSOSA evaluation report will be ready sometime during the week of April 3, 2017. For this reason we are asking the Court to continue the scheduled March 24, 2017 hearing, in its entirety, until April 21, 2017 to allow defense counsel to adequately scrutinize the report and present a sentencing memorandum on behalf of Mr. McIntyre.

The court denied the continuance. Following the stipulated trial on March 24, the court found McIntyre guilty of rape of a child in the third degree and rape of a child in the second degree. Defense counsel asked the court to continue the sentencing hearing to April 28 to allow Dr. O'Connell to attend and "provide comments to the Court." The State expressed concern that the grandmother of one of the victims who was present on March 24 would not be available on April 28. The court scheduled the sentencing hearing for April 21. The court ruled, "I'm not going to continue it out to the 28th

2

because it's not necessary to hear from a doctor. Doctors generally know what needs to go into a report, and I can read the report, and I will."

Before the sentencing hearing, McIntyre submitted Dr. O'Connell's 25-page sexual deviancy report. The April 7 report states the results of clinical testing suggest McIntyre is "somewhat unwilling to accept a psychological interpretation of his problems. He is not very introspective and his pessimistic attitude may make it difficult for him to establish a therapeutic relationship." The report states McIntyre did not acknowledge that he engaged in sex with a child. While McIntyre acknowledged "some type of sexual behavior occurred," Dr. O'Connell states McIntyre "has thinking errors which he uses to help him explain the sexual behavior that did occur." Dr. O'Connell states McIntyre "does not believe he needs help to control his sexual impulses and behaviors."

With regard to risk assessment, Dr. O'Connell concluded McIntyre was in the "low-moderate risk category" because of his "relative young age," lack of a long-term "live-in relationship," and "having an unrelated victim."[1] In assessing McIntyre's "potential to change" and "ability to self-regulate" his "sexual and emotional behavior," Dr. Connell placed McIntyre in the "moderate need" category.[2] Dr. O'Connell stated McIntyre's scores were elevated because of his impulsivity, lack of a "primary" sexual relationship, his failure to cooperate with supervision by committing an additional offense while on conditional release, and his "deviant sexual interests."

---

[1] Emphasis in original.
[2] Emphasis in original.

Dr. O'Connell also noted McIntyre suffers symptoms of an "undiagnosed and untreated traumatic brain injury," the result of a serious car accident at the age of 21. Dr. O'Connell recommended McIntyre obtain a thorough neurological assessment. Acknowledging McIntyre would spend at least two years in prison before he could begin treatment under a SSOSA, Dr. O'Connell states that "chances for treatment mitigation of underlying neurological problems may well have passed if [McIntyre] were to serve a much longer prison sentence."

During the sentencing hearing on April 21, the court questioned whether McIntyre was "amenable to treatment." In response, defense counsel told the court, "[I]f that's what . . . the Court is concerned about, I'm sure that Dr. O'Connell could offer some supplement or some addendum or whatever if you want that specific language."

The court ruled McIntyre was not amenable to treatment and declined to impose a SSOSA.

> I have Dr. O'Connell's report. We've been discussing it. I understand that in addition to lying to the victims and lying to the police, Mr. McIntyre also lied to his own evaluator.
> That does not support a finding that he is amenable to treatment, because a person is unlikely to be amenable to treatment if they are unable to come to grips with what they have done. I don't say that it is impossible. People can change. People can figure things out over time. But it is a pretty important thing to take into account.
> I appreciate that his attorney took steps in order to make sure Mr. McIntyre had the best possible situation today.
> But the efforts of [defense counsel] are not the same as amenability on the part of Mr. McIntyre. And in the end, following — following Mr. McIntyre's new interview with Dr. O'Connell, the conclusions that Dr. O'Connell renders still don't do more than say that the defendant might be amenable to treatment and that, if he is amenable to treatment — and this is my paraphrase — the chances for treatment mitigation of underlying neurological problems are increased if he is not in prison for very long.
> . . . .

4

But he doesn't actually say that Mr. McIntyre is amenable to treatment, and I think it is safe to assume, given — given his qualifications, that it's because he does not know if it's — if it's so.

The court also rejected a SSOSA because McIntyre committed the crime of rape of a child in the second degree while the charges against him for rape of a child in the third degree were pending.

One of the things about a SSOSA is that the Court has to be satisfied that a person can safely be in the community following rules imposed by the Court.

Mr. McIntyre, I'm sure you will understand why I have no satisfaction that you would do that, because when you were under a court order to avoid certain things and people and situations, you committed another crime.

The court sentenced McIntyre to a concurrent sentence of 41 months on rape of a child in the third degree and 158 months on rape of a child in the second degree. The court imposed community custody conditions, including a prohibition against forming relationships with women or families who have minor children, remaining overnight in a residence where minor children live or spend the night, accessing the Internet without approval of the community corrections officer and treatment provider, and possessing or maintaining access to a computer without approval.

ANALYSIS

Denial of Continuances

McIntyre challenges the court's denial of his requests to continue the stipulated trial and sentencing. McIntyre claims the court deprived him of his due process right to present evidence in support of the SSOSA and his right of compulsory process.

5

The "decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). This court reviews decisions to grant or deny a continuance under an abuse of discretion standard. Downing, 151 Wn.2d at 272. Unless the trial court's decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons,' " it should be upheld. Downing, 151 Wn.2d at 272-73 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

"Whether the denial of a continuance rises to the level of a constitutional violation requires a case-by-case inquiry." Downing, 151 Wn.2d at 275. Because "continuances and compulsory process in criminal cases involve such disparate elements as surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures," whether to grant or deny a continuance is "within the discretion of the trial court, to be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied." State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974).

McIntyre cannot show the court abused its discretion or prejudice as a result of the court's denial of his request to continue the stipulated trial or the sentencing hearing.

In deciding whether to impose a SSOSA, the court must "consider whether the offender is amenable to treatment." RCW 9.94A.670(4). The SSOSA statute also requires courts to "consider the risk the offender would present to the community . . . or to persons of similar age and circumstances as the victim." RCW 9.94A.670(4).

Even if the court granted a continuance to allow Dr. O'Connell to attend the sentencing hearing or supplement his report, McIntyre cannot show the court would

have reached a different result. The record shows the court reviewed the report and SSOSA evaluation Dr. O'Connell submitted before the sentencing hearing. The court concluded McIntyre was not amenable to treatment and presented a risk to the community.

Community Custody Conditions

McIntyre challenges the court's authority to impose community custody conditions that prohibit him from dating women or forming relationships with families who have minor children, staying overnight in a residence where minor children live or are spending the night, and accessing the Internet or possessing or accessing a computer without prior approval. The four community custody conditions state:

> 8. Do not date women or form relationships with families who have minor children, as directed by the supervising Community Corrections Officer.
> 9. Do not remain overnight in a residence where minor children live or are spending the night.
>
> . . . .
>
> 14. Do not access the Internet on any computer in any location, unless such access is approved in advance by the supervising Community Corrections Officer and your treatment provider. Any computer to which you have access is subject to search.
>
> . . . .
>
> 18. You may not possess or maintain access to a computer, unless specifically authorized by your supervising Community Corrections Officer. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, digital cameras, [W]eb cam[era]s, wireless video devices or receivers, CD/DVD[3] burners, or any device to store or reproduce digital media or images.

McIntyre contends the court exceeded the statutory authority to impose the conditions because the conditions are not crime-related. We disagree.

---

[3] Compact disc/digital versatile disc.

A sentencing court has the statutory authority to order an offender to "[c]omply with any crime-related prohibitions" as part of any term of community custody. RCW 9.94A.703(3)(f); see also RCW 9.94A.505(9). A "crime-related prohibition" is an "order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

We review the imposition of crime-related community custody conditions for abuse of discretion. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007); State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015). A court abuses its discretion if imposition of a sentencing condition is manifestly unreasonable. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). "A court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists." State v. Nguyen, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (citing Irwin, 191 Wn. App. at 658-59). The prohibited conduct need not be identical to the crime of conviction, but there must be " 'some basis for the connection.' " Nguyen, 191 Wn.2d at 684 (quoting Irwin, 191 Wn. App. at 657).

There is a reasonable relationship between the crime of rape of a child in the third degree and rape of a child in the second degree and the conditions restricting McIntyre from dating women with minor children and staying overnight in a residence where minor children live. Although McIntyre did not befriend the parents of his victims, dating women with minor children "is reasonably related to the[ ] crimes." State v. Autrey, 136 Wn. App. 460, 468, 150 P.3d 580 (2006).

The conditions requiring McIntyre to obtain authorization for Internet and computer access are crime-related. McIntyre used social media to communicate with

8

his victims. Here, unlike in <u>State v. O'Cain</u>, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008), there is overwhelming evidence that technology facilitated commission of the crimes.

We affirm the convictions and entry of the judgment and sentence.

Schindler, J.

WE CONCUR:

Andrus, J.