IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 85334-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ROBERT PATRICK ARVISO, | |
| Appellant. | |

DÍAZ, J. — A jury convicted Robert Patrick Arviso of felony violation of a no contact order (NCO) which protected his former girlfriend, E.M.,[1] and of resisting arrest. Before trial, Arviso moved to admit the plea agreement underlying the NCO to explain why, at the time of his arrest, he mistakenly thought the NCO had been rescinded. In response, the State sought a short continuance. Arviso now argues that the trial court—when it indicated it *would* grant the continuance *if* it admitted the plea agreement—forced him to forgo his right to present the defense that he did not "knowingly" violate the NCO. Arviso also argues that we should reverse his conviction for resisting arrest because law enforcement used excessive force in effectuating the arrest, rendering his arrest "unlawful" and vitiating an essential

---

[1] We refer to E.M. by her initials to protect her privacy.

element of that crime.  We disagree with both arguments, affirm the trial court, but remand solely to strike the imposition of the victim penalty assessment (VPA).

I.     BACKGROUND

Arviso and E.M. were in an intimate relationship between 2021 and 2022. In April 2022, the State charged Arviso inter alia with committing an assault in the second degree against E.M., with a domestic violence indicator.  Two hearings then occurred.  First, in May 2022, the trial court imposed a domestic violence NCO protecting E.M.  Second, in June 2022, Arviso pled guilty to assault in the fourth degree, with a domestic violence indicator.  As part of the plea agreement, the parties agreed that:

c) The prosecuting attorney will make the following *recommendation* to the Judge:

Count 1: . . . *NO POST CONVICTION NCO*.

(Emphasis added).  The court then released Arviso prior to his sentencing hearing, for which he did not appear.  The court issued a warrant for his arrest.

On October 8, 2022, Arviso visited a property in Snohomish County which E.M. was known to frequent.  As told by Arviso, he visited the property to find a missing car, which he believed belonged to him and whose whereabouts he believed E.M. would know.  Arviso entered and waited in a trailer on the property, and E.M. arrived at the trailer shortly thereafter.  When the owner of the property arrived at the trailer, she saw them sitting together.

Contemporaneously, another resident of the property called law enforcement, knowing that there was an NCO between Arviso and E.M.  Law enforcement arrived shortly after and confirmed both that there was an NCO

2

between Arviso and E.M. and that Arviso had multiple outstanding warrants for his arrest. When the sheriff deputies arrived, they surrounded the trailer and, over a loudspeaker, ordered Arviso to exit. Arviso testified he was aware of law enforcement's presence following their announcement. The owner of the trailer and E.M. exited the trailer, and the owner confirmed to law enforcement that Arviso was in the trailer.

Arviso remained inside the trailer for approximately an hour. Then, the deputies deployed pepper balls to extricate him. After that, Arviso complied and the deputies took him into custody.

The State charged Arviso with two new crimes, namely, with felony violation of an NCO (which was a felony because he had had two prior convictions for violating an NCO or other type of protection order), and with resisting arrest under RCW 9A.76.040 for refusing to exit the trailer.

The jury found Arviso guilty of both crimes. Arviso timely appeals.

## II.    ANALYSIS

### A.    Arviso's Right to Present a Defense

Before trial, Arviso moved to admit the plea agreement in the June 2022 assault case. His counsel argued the plea paperwork

> relates to the same cause number that the no-contact order is for, and in the section regarding the prosecutor's recommendation to the judge, the words on the document is 'no post-conviction no-contact order' . . . it does go to Mr. Arviso's understanding as to the status of the no-contact order if the last piece of paperwork he signs says the words 'no post-conviction no-contact order.'

In other words, Arviso argued the court should admit the agreement, not to prove that the NCO in fact had been rescinded, i.e., the "validity of the order," but

because

> the State has to prove that he *knowingly* violated an order.  If he signs
> paperwork that says the words 'no post-conviction no-contact order,'
> it goes to his knowledge.

(Emphasis added).

The court found that the plea agreement had "very minimal probative value" in that the agreement "*could* . . . lend[] credibility to [Arviso's] belief that he didn't think [the NCO] was in effect, but *first* there would have to be some evidence of" the fact that the NCO was not in effect.  (Emphasis added).  The court did not grant the motion to admit at that time and, instead, heard from the State.

The State responded that it wished to obtain the transcript of the second hearing in June 2022, where the court accepted Arviso's change of plea, so as to determine, as the court had stated, "what [Arviso] was told, if anything about the NCO."  The State also asserted that to obtain a transcript would require a continuance of the trial.[2]

The court then reiterated that "there is again some minimal relevance.  I think it raises some issues that haven't been briefed . . . I think it would be fair in response to . . . [have] . . . a transcript of the hearing . . ."  The court did not grant the motion to continue at that time and, instead, heard from Arviso's counsel who stated:

> because of my schedule, if the Court is inclined to grant a
> continuance for the State to get a transcript, then I – that puts me

---

[2] The State also read from an email between it and Arviso's counsel, in which his counsel indicated that their "recollection [of the June hearing] is that it was clear . . . that he cannot have contact with [E.M.]" and "that [Arviso] was probably just nodding along, focused on being released."  We need not further discuss the content of that discussion.

4

again in a situation where I'm trying to balance Mr. Arviso's speedy trial rights. [3]

The court responded "well, my *inclination* would be to grant [a] continuance for a week." (Emphasis added). The court did not grant the motion to continue at that time and, instead, Arviso's counsel interjected and stated:

> *If* the Court is indicating that they're granting a continuance . . . *I'll revoke my request to enter the plea paperwork*, which should not present the need for a continuance.

(Emphasis added).

At the court's suggestion, Arviso's counsel then spoke with Arviso off the record and, when they returned, Arviso's counsel confirmed the decision, stating:

> I'm asking to proceed today. *I'll retract my motion in limine* No. 10. I believe that would cure this issue if I'm not arguing that at all.

> I had that conversation with Mr. Arviso. It has been made clear to him that conversations about the plea paperwork would necessitate a continuance in this case. *We would like to proceed now.*

(Emphasis added).

The State asked whether that decision was "a strategic decision being made by defense" and Arviso's counsel responded "yes."

The court concluded this conversation by stating: "All right. Then information regarding . . . the plea paperwork will be excluded. And – or I guess *it's withdrawn* or the defense is not going to get into that. *I shouldn't say it's excluded*."

---

[3] Arviso does not argue on appeal that the trial court actually violated his right to a speedy trial under CrR 3.3 by offering the possibility of a continuance, though he seems implicitly to suggest the court imposed such a Hobson's choice. Regardless, as the State argues, there is no dispute that the limited proposed continuance fell still within Arviso's "then-existing time-for-trial deadline." Therefore, we do not consider this argument.

(Emphasis added). Neither party objected to how the trial court characterized Arviso's decision. The court never granted either the motion to admit the plea agreement or the motion to continue the trial. Neither party asked for a ruling on either motion. The parties and trial court merely proceeded to a different topic of discussion.

Arviso first argues that the trial court's "refus[al] to admit the guilty plea statement without granting the prosecution" an "unwarranted continuance" violated his right to present a defense. This argument is factually incorrect and procedurally barred.

Factually, in the colloquy detailed above, the court simply took no action at all, made no decision of any kind, and did not grant or deny Arviso's motion to admit the plea agreement or the State's putative motion to continue the trial. Rather, Arviso made the "strategic decision" to "retract" his motion, to not "argu[e] [his defense] at all," and "to proceed now."

The effect procedurally is that "any error in admitting or excluding evidence is waived," *even if* we charitably construe the court's musings about the relevancy of the evidence and the need for a continuance as "tentative" rulings on those motions. State v. Carlson, 61 Wn. App. 865, 875, 812 P.2d 536 (1991) ("Carlson *never sought a final decision*. He therefore waived any error in excluding that evidence") (emphasis added)). Stated otherwise, "[a] defendant who does not seek a final ruling on a motion in limine after a court issues a tentative ruling waives any objection to the exclusion of the evidence." State v. Riker, 123 Wn.2d 351, 369, 869 P.2d 43 (1994).

And specifically, as to the State's motion, "[i]n both criminal and civil cases, the *decision* to grant or deny a motion for a continuance rests within the sound discretion of the trial court." State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (emphasis added). And the court may continue the trial date on its own motion or the motion of a party when the administration of justice so requires and the defendant will not be prejudiced in the presentation of his defense. CrR 3.3(f)(2). These principles of our review, however, presume a "decision" to grant or deny a motion to continue. No such decision was made here.

In short, Arviso waived any claim that the trial court abused its discretion in its handling of the competing pre-trial motions because Arviso did not secure a final ruling by the trial court on the decisions he asks us to review.

In turn, we cannot conduct the two-part test our Supreme Court provides, e.g., in State v. Jennings, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022), when a defendant challenges a trial court's evidentiary ruling by claiming a violation of their Sixth Amendment right to present a defense. We are unable to analyze the lower court's evidentiary ruling for an abuse of discretion, as no ruling occurred here. Id. at 58-59. And, for the same reasons, we cannot consider whether a non-existent ruling violated the defendant's Sixth Amendment right to present a defense. Id. And, "phrasing an evidentiary ruling as a constitutional claim" cannot provide "a means for an end run around the Rules of Evidence." State v. Ritchie, 24 Wn. App. 2d 618, 629, 520 P.3d 1105 (2022), review denied 1 Wn.3d 1006, 526 P.3d 851 (2023). Arviso did not comply with our procedural requirements, and his claim thus fails.

B.      Resisting Arrest

Arviso argues, for the first time on appeal, that we should reverse his conviction under RCW 9A.76.040 for resisting arrest because the sheriff deputies used excessive force in arresting him, thus invalidating the "lawfulness" of his arrest, which is an essential element of the statute. We conclude Arviso waived this issue below, and cannot argue it now, for several reasons.

We may refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). "The purpose underlying our insistence on issue preservation is to encourage 'the efficient use of judicial resources.'" State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). "Issue preservation serves this purpose by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." Id. at 304-05.

Arviso did not brief the legality of his arrest or whether the deputies used excessive force as an issue for trial. There is no record of his attorney arguing below that the officers used excessive force to effectuate his arrest. The most substantive reference to the circumstances of Arviso's arrest was his own testimony that he stayed in the trailer until he eventually surrendered, but without mentioning the pepper balls, or its purposes and general effects. Neither Arviso nor any of the law enforcement officer witnesses testified about why they chose to fire pepper balls to effectuate his arrest, or the manner in which they did.

Moreover, the trial court was not asked to and did not make any findings of fact about whether the use of pepper balls was proportionate. The court

8

furthermore was not asked to and did not issue any jury instructions related to what circumstances might make an arrest unlawful or ask the jury to consider it by means of special interrogatories.

Neither during trial nor afterward did Arviso move to dismiss the charges on the grounds that his arrest was "unlawful" under RCW 9A.76.040 or the case law he now adduces.

On appeal, Arviso does not argue that he could bring this issue for the first time as being within the bounds of RAP. 2.5(a). In his opening brief, he did not argue that the verdict was manifest constitutional error that he could raise for the first time on appeal. Instead, he simply argues that the statute was improperly applied. In its response brief, the State argued that Arviso waived his right to argue his arrest was unlawful by not raising the issue below. Arviso failed to address the State's arguments in his reply brief. Instead, he simply reiterated his argument that the State failed to prove his arrest was lawful under the relevant statute.

For these reasons, we conclude Arviso failed to preserve this argument below. Thus, we affirm the trial court.

C.    VPA

Arviso argues that we should remand this matter to the trial court to strike the VPA. The State does not object to a limited remand for this purpose.

In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts now

are statutorily required to waive VPAs, even those imposed prior to the 2023 amendments, on the defendant's motion. Id.; RCW 7.68.035(5)(b).

Here, the court imposed a $500 VPA in May 2023. The court also found that Arviso was indigent. In State v. Ellis, this court determined that, although the fees were imposed prior to the effective date of these amendments, "it applies to Ellis because this case is on direct appeal." 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Similarly, even though Arviso's restitution was imposed prior to the law's effective date, RCW 9.94A.753(3)(b) is applicable because his case is on direct appeal.

Thus, accepting the State's concession, we remand this matter to the trial court to strike the VPA.[4]

### III.     CONCLUSION

We affirm the trial court except to strike Arviso's VPA.

Díaz, J.

WE CONCUR:

Feldman, J.                                    Coburn, J.

---

[4] Arviso also filed a statement of additional grounds ("SAG"), under RAP 10.10(c), where he appears to argue (1) that his plea agreement legally and actually lifted his NCO and (2) that the law regarding felony NCO violations should be modified so that all three qualifying violations must be against the same person, instead of allowing qualifying violations to be against different persons. As to the former, we do not reach the merits of claims that rely on evidence outside of the record. See State v. McFarland, 127 Wn.2d 322, 338 n. 5, 899 P.2d 1251 (1995) ("a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record"). The latter is a policy-based argument better made to the legislature instead of to the court.